[Civil No. 3028. Filed November 9, 1931.]

[4 Pac. (2d) 668.]

STATE CONSOLIDATED PUBLISHING COM-
PANY, a Corporation and a Taxpayer of the
City of Tucson, County of Pima, State of Ari-
zona, Appellant, v. BEN C. HILL, as City Attor-
ney of Said City of Tucson, FRANK J. CORDIS,
F. E. GERLACH, W. H. HART, E. D. ROCK-
WELL, P. M. ELIAS and GEORGE L. REID,
as Councilmen of Said City of Tucson, C. E.
PEQUIGNOT, as City Auditor of Said City of
Tucson, and W. A. JULIAN, as Mayor of Said
City of Tucson, Appellees.

For original opinion, see *ante*, p. 21, 3 Pac. (2d)
525.

Messrs. Linn & Allen, for Appellant.

Mr. Ben C. Hill, *in pro. per.* and for All Appellees.

ROSS, J.—Appellee Hill has filed a motion for rehearing in which he says our decision "is apparently based upon a misapprehension of the record, particularly with reference to the issues presented by the pleadings and the theory upon which the case was tried in the lower court."

Appellee is his own attorney, and in his motion we think has well demonstrated that his client has a very pugnacious, persistent, fearless, and zealous lawyer; also that the lawyer has a client who devoutly believes he is right in this litigation. Acting in this dual capacity, it is evident that the client's zeal has entirely eclipsed the sound judgment of the lawyer, and that the latter is looking too much through the glasses of the former, and not enough through the glasses of the counselor and adviser.

With all due respect to both client and lawyer, we did not misapprehend the record, or the issues, or the theory upon which the case was tried in the lower court.

These facts are indubitable, and appear in the record: That the city of Tucson is a municipal corporation; that during the years 1928 and 1929 appellee was its city attorney; that his salary was $4,200 per year; that the city annually budgeted that amount, and no more, to that office; that appellee was appointed such city attorney some five times, each time for a term of two years. We quote trial questions to appellee and his answers thereto, as follows:

"Q. You are at present City Attorney of the City of Tucson, are you? A. Yes, sir.

"Q. How long have you been City Attorney, Mr. Hill? A. Since 1921, January. I am serving my tenth year now.

"Q. You are finishing your fifth term then as City Attorney, is that a fact? A. Right.

\* \* \* \* \* \* \* \* \* \* \*

"Q. Mr. Hill, in the month of January, 1927, were you then appointed City Attorney of the City of Tucson? A. I was appointed in January, 1927, City Attorney of the City of Tucson by the then Mayor, John E. White, for a period of two years.

"Q. For a period of two years from and after the first of January, 1927? A. The first Monday in January.

"Q. Now, Mr. Hill, on the first Monday in January, 1929, you were re-appointed by Mayor Julian, were you not? A. Yes, sir; I was appointed on the first Monday of January, 1929, for two years by Mayor Julian.

"Q. Both of those appointments were ratified by the city council? A. Yes, sir.

"Q. And a portion of those two appointments represented by the fiscal year for 1928–1929 was at a salary of $4,200 a year, was it not, Mr. Hill? A. Yes."

The trial judge, we assume, knew the issues and the theory upon which the case was tried. In a memorandum opinion, he said:

"The issue here presented is *legal only,* and the proposition, simply stated, is: Did the City of Tucson, as a municipal corporation, have the legal right to pay the aforesaid $2,000 to Hill while he was acting as city attorney? . . . [Italics ours.]

"Plaintiff's first ground is that it was understood and agreed between the City of Tucson and Hill that he would act as city attorney for the fiscal year 1928–1929 for a salary of $4,200, and that the duties he was to perform under this contract included the legal services in the Gray defalcation case; and, further, that Hill performed the duty, for which he was paid this $2,000, as city attorney, and that therefore he had no right to receive the compensation paid him, regardless of the source from which the payment was made.

"At the trial the plaintiff failed to produce any proof of the contract alleged in the complaint. . . .

"However, plaintiff contends that it is entitled to

recover on the first ground without the proof of the alleged contract, on the theory that Hill was city attorney, that he performed these services as city attorney, and since the services were legal, Hill cannot be paid for them in excess of his annual salary of $4,200 set forth in the 1928–29 budget.''

After stating the issues and theories of plaintiff, the court proceeds to decide, giving his reasons therefor at considerable length, that section 17 of part 2 of article 4 of the Constitution does not apply. He says that it ''was admitted by both sides . . . that there is no provision in the constitution or laws of the state of Arizona . . . which specifically prohibits the city council from increasing or diminishing the salary of the city attorney during his term of office.''

He then quotes section 17 of part 2 of article 4, and cites, as authority that said section has no application, *Patty* v. *Greenlee County*, 14 Ariz. 422, 130 Pac. 757.

In our opinion, upon the issues and theories of the case as stated by the trial judge, we came to a different conclusion as to what the law is.

In his motion, appellee insists that he was not an officer of the city of Tucson. In his testimony, as we read it, he admits that he was an officer. Indeed, it was not seriously questioned that he was not an officer; it seemed to be taken for granted that he was. The city charter provides that the city government shall be vested in a mayor and common council and such subordinate officers as the mayor and common council may deem necessary to appoint. Section 1, article 2, Charter of the City of Tucson (Act No. 73, page 181, Laws of Territory 1883). His appointment conclusively shows the mayor and common council deemed a city attorney necessary to the proper administration of the city's government.

Appellee's contention amounts to this: That he was an officer of the city except when it came to being

compensated, and then, as he says in his motion for rehearing, his engagement "was a part-time job."

We submit that an examination of our opinion demonstrates conclusively that we did not misapprehend the record, or the issues, or the theory in the trial below.

The question of the applicability of the constitutional provision was not only in point and an issue of the pleadings, but passed upon in the trial. The point is so fundamental that the trial judge devoted several pages to it in his memorandum opinion. It is a rule of this court to take notice of fundamental error whether assigned or not. Error that goes to the very foundation of the action will be reviewed, even though not assigned. *Wolfley* v. *Gila River Irr. Co.,* 3 Ariz. 176, 24 Pac. 257; *Keyser* v. *Shute,* 3 Ariz. 336, 29 Pac. 386; *Chenoweth* v. *Budge,* 16 Ariz. 422, 145 Pac. 406; *Davis* v. *Dodson,* 4 Ariz. 168, 35 Pac. 1058.

We desire to add that, even if the plaintiff and defendants had stipulated and agreed that the constitutional provision that prohibits the increasing or diminishing of a public officer's compensation during his term did not apply, the court would not be bound thereby. Parties cannot stipulate as to the law applicable to a given state of facts and bind the court. They may stipulate the facts, but the court will apply the law.

In our decision, we directed judgment against all the defendants. Appellee suggests that the city auditor should not be held liable, inasmuch as all he did was to approve a warrant regular on its face. We agree with this. The judgment is therefore modified by striking therefrom the name of C. E. Pequignot as one of the judgment debtors.

The motion for rehearing is denied.

McALISTER, C. J., and LOCKWOOD, J., concur.