[Civil No. 3585.   Filed October 23, 1935.]

[50 Pac. (2d) 12.]

JOHN W. ROSS, Appellant, v. Y. C. WHITE, State Superintendent of Banks and Ex-officio Receiver of Arizona Southwest Bank, Insolvent, Appellee.

Mr. John W. Ross and Mr. William Spaid, for Appellant.

Mr. John L. Sullivan, Attorney General, Mr. Allan K. Perry, Mr. Lloyd J. Andrews and Mr. Evo De Concini, Assistant Attorneys General, for Appellee.

FAIRES, Superior Judge.—On June 21, 1931, Arizona Southwest Bank, having its main office in Tucson, with branches in Douglas, Coolidge, and Casa Grande, failed to open its doors, and was taken over by James B. Button, superintendent of banks, for liquidation. On this date K. Berry Peterson, the then Attorney General of Arizona, advised the superintendent of

banks that he should employ John W. Ross, petitioner below, the appellant herein, as legal counsel in the liquidation of said bank. This was done and Mr. Ross acted as legal adviser to the superintendent of banks in this liquidation until August 1, 1933. On this last-named date, having delivered to the Attorney General all pending files pertaining to the Arizona Southwest Bank, a dispute arose between the appellant and Y. C. White, superintendent of banks, successor to James B. Button, as to payment of legal services rendered on behalf of the insolvent bank. Thereafter, on December 23, 1933, this appellant filed a petition alleging, among other things, an agreement of employment between himself and Clarence Cox, deputy superintendent of banks under James B. Button, superintendent of banks, whereby the petitioner was to be paid a monthly retainer fee, certain commissions, and the reasonable value of the services rendered, to be determined on petition and showing to the court. The answer of the superintendent of banks was filed on March 27, 1934, which, in effect, denies everything pleaded by petitioner, and sets up in defense an altogether different contract of employment. The matter was tried before the Honorable FRED W. FICKETT of Pima county on April 23, 1934, the result being a denial of the petition.

The record here presents many questions, but it is only necessary to dipsose of certain assignments of error in order to determine the cause. First, is the order herein involved a final order from which an appeal lies? It is the contention of appellee that the order from which this appeal is attempted to be prosecuted is not an appealable order, subject to review by this court. They argue that the appeal, if any, must be from the order approving or rejecting the receiver's final account, citing *Ritter* v. *Arizona Cattle Co.*, 34 Ariz. 278, 271 Pac. 25, as upholding this view. While

we agree with the reasoning in that case, that neither an order approving monthly reports of a receiver nor an order directing him to pay attorneys' fees, made before the coming in of his final account, is a final order and appealable, here we have a different situation, which is answered fully by one of appellee's cited cases, *In re Prescott State Bank's Estate,* 36 Ariz. 419, 286 Pac. 189, and the authorities cited therein.

This action was instituted by an attorney at law, the appellant, wherein he sought an order of the court directing the superintendent of banks to pay him a sum of money upon a *quantum meruit,* to be determined in payment of specific services rendered. The order finally entered by the court was not an interlocutory order, but was a final judgment of the court, definitely settling, as far as the ruling of the court was concerned, the rights of the petitioner and the liability of the estate of Arizona Southwest Bank to the petitioner, hereinafter referred to as appellant. As such, we hold that the order made by the court was a final order, and, hence, appealable under section 3659, subdivision 1 of the 1928 Code of Arizona.

Secondly, we are called upon to review assignments of error based upon the alleged bias and prejudice of the trial judge. These assignments rest, in part, upon a claim of surprise at the failure of Judge FICKETT to assign the matter to another judge, for hearing, set up in an affidavit filed by appellant in support of a motion for a new trial, and, in part, upon the conduct of the judge during the hearing.

So far as the claim of surprise is concerned, it is sufficient to point out, in the first place, that such surprise is not the kind of surprise for which, under the statute, a new trial can be granted, and, in the second place, that the Code provides a convenient way to effect a change of judge by the simple expedient of filing an affidavit of disqualification. The record

in this case is silent as to any attempt on the part of appellant to disqualify the presiding judge in the statutory manner, either before or during the trial. While trial judges are perhaps too prone to step aside voluntarily, on the slightest intimation that either party would prefer another judge, and while members of the bar are commendably reluctant to file disqualifying affidavits, except in extreme cases, neither of these considerations offers any basis for a claim of surprise over the failure of a judge to disqualify himself, by a litigant who has not availed himself of his plain statutory remedy. The law is well settled in this jurisdiction that one cannot wait until there has been an adverse ruling upon his claim and then raise the question of the disqualification of the trial judge on appeal, unless, of course, it should clearly appear that the judge was, in fact, so biased and prejudiced as to be unable to give the complaining litigant a fair trial.

It is apparent from the record that the court, with commendable zeal and diligence, exercised a vigilant supervision over the receivership, and in the absence of timely objection on the part of appellant and formal demand for a change of judge, we cannot go so far as to hold that such bias and prejudice was shown as to deprive appellant of a fair trial, or that he was prejudiced by reason of Judge FICKETT'S failure to voluntarily disqualify.

Now, we come to a consideration of the formal order prepared by the court. The hearing was had on April 23, 1934, upon appellant's petition, and the court, at the conclusion of the hearing, on the same date, announced its decision denying the petition. The formal order was not entered until June 21, 1934. Meanwhile, findings of fact and conclusions of law had been prepared by both sides and submitted to the

trial judge prior to entering of the formal order on June 21st. However, the court properly refused to make findings for the reason that no seasonable request was made therefor, prior to the order being made denying the petition.

The appellant does not question the correctness of the court's ruling in refusing to make findings, but it becomes important when we come to consider the manner of signing and filing the formal written order on the twenty-first day of June, 1934. It appears that the presiding judge, after refusing to make findings of fact and conclusions of law, prepared, signed, and filed the said final order without notice to appellant or his approval of said order as to form, as provided for in rule VII of the Uniform Rules of the Superior Courts. Appellant's first notice of this action by the court was his receipt of a copy of the order sent through the mail, after the original had been signed and filed.

In order to determine the legal force and effect of this method employed by the court in preparing and filing the final judgment, without notice to the parties, we revert to the remarks of the court at the conclusion of the case. After an extended review of the testimony and frequent references to conversations had with the various witnesses prior to the hearing, the court concluded with this observation: "The petition will be denied. This is not a finding of fact or conclusion of law." It is evident from the record that both sides treated this as an order for judgment, and while no assignment of error is directly framed on the failure of the court to follow the provisions of the rule in question pertaining to the filing of the final order and judgment, appellant argues the question in his opening brief, at page 51, under Assignment of Error No. VI.

██ The question of the force and effect of these rules has been passed upon by us numerous times. The object and purpose of the particular rule is to secure to the parties full opportunity to consider and to object to and to be heard on the form of the order. This is a substantial right. Here the act omitted must have been performed prior to the act whose validity is involved. Hence, failure to perform the omitted act, whether by court or counsel, renders the act void.

█ Failure of the court to comply with the rule we hold to be fundamental error, which this court is bound to notice even in the absence of appropriate assignment or argument. In view of our conclusion on this point, it would serve no useful purpose to consider the remaining assignments of error. Since it appears that no valid judgment was ever rendered in the present case, there was nothing to appeal from, and it is necessary that the appeal be dismissed. The procedure which should be followed by either party desiring to bring the matter before this court for review is set forth in detail in the case of *Chiricahua Ranches Co.* v. *State,* 44 Ariz. 559, 39 Pac. (2d) 640. Appellee will recover his costs in this court, the costs of the trial court to abide the final termination of the matter.

The appeal is dismissed.

LOCKWOOD, C. J., and McALISTER, J., concur.

ROSS, J., having disqualified himself, the Honorable C. C. FAIRES, Judge of the superior court of Gila county, was called to sit in his stead.