[Civil No. 3709.   Filed November 16, 1936.]

[62 Pac. (2d) 131.]

TRUMAN HARDY COLLINS, Relator, v. THE SU-
PERIOR COURT OF THE STATE OF ARI-
ZONA, IN AND FOR THE COUNTY OF MARI-
COPA, Respondent.

Mr. George M. Sterling, for Relator, and Mr. Edward E. Selden, Associate Counsel.

Messrs. Cox & Moore, for Respondent.

Messrs. Phillips, Holzworth & Phillips; Messrs. Chalmers, Fennemore & Nairn; Mr. J. Early Craig; Messrs. Moeur & Moeur; Mr. M. C. Burk; Mr. V. R. Seed; Mr. J. S. Wheeler; Mr. D. P. Skousen; Messrs. Silverthorne & Van Spanckeren; Mr. L. J. Cox, Mr. Stanley A. Jerman; Messrs. Armstrong, Kramer, Morrison & Roche; Messrs. Beer, Walsh & Wilmer; Mr. W. F. Dains; Mr. R. H. Brumbach; Mr. Walter J. Thalheimer; Mr. Floyd M. Stahl; Mr. F. C. Struckmeyer; Mr. J. E. Flynn; Messrs. Baker & Whitney; Mr. Lawrence L. Howe; Messrs. Ellinwood & Ross; Messrs. Cunningham, Carson & Gibbons; Mr. Henry H. Miller; Mr. Matt S. Walton; Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld; Mr. Geo. D. Locke, *Amici Curiae.*

LOCKWOOD, C. J.—This is an original proceeding in *certiorari* in this court to review the action of the Superior Court of Maricopa County, finding Truman Hardy Collins, hereinafter called the relator, in contempt for failure to comply with the provisions of a judgment of said Superior Court in the case of *Collins* v. *Collins*, No. 144–D, in said Superior Court of Maricopa County, filed on the 28th day of August, 1933. There are two questions raised for our consideration in this proceeding: (a) Was there ever any valid judgment rendered in case No. 144–D? and (b) If there was, is a violation of that particular portion thereof directing relator to pay the taxes on certain premises described in said judgment, and the interest and principal of a mortgage on the same premises, punishable as a contempt?

The facts in the case as shown by the record, and material for the determination of these two questions, may be stated as follows. The relator filed a complaint for divorce againset his wife, Rachel Bell Collins, on the 15th day of April, 1933, being properly represented by counsel. Defendant, also being represented by counsel, filed her answer on the same day. The matter was heard before Honorable HOWARD C. SPEAKMAN, one of the judges of the Superior Court of Maricopa County, on the 17th day of April, both parties being present and represented by counsel. Evidence was offered on behalf of plaintiff in support of the allegations of the complaint, and at the hearing a certain agreement between the parties in regard to their property rights, dated on April 15th, was offered in evidence. This agreement contained, among other things, the following provisions:

"That whereas the parties hereto being wife and husband, find that they cannot longer continue such relations, on account of marital difficulties, and have found it, after due deliberation, impossible to reconcile

their troubles and therefore desire to divide their property and live separate and apart.

"Now, therefore, it is hereby agreed, that the first party hereto accepts as a settlement of her interest in the property rights of the parties hereto, and accepts in lieu and satisfaction of support money, the sum of two thousand dollars ($2000.00) to be evidenced by a promissory note, the said sum to be payable at the rate of thirty dollars ($30.00) per month, without interest, payments commencing on the 20th day of April, 1933. Also first party shall receive, and the second party shall give unto her, an undivided one-half interest in and to Lot 4 of Block 2 in Princeton Heights, a subdivision of the City of Phoenix, Maricopa County, State of Arizona, and the right to the immediate possession and control of the whole of said premises. . . .

"And the second party agrees that he will at his own cost, discharge the present or existing mortgage on the above described premises to be taken over by the first party, and that the same will be discharged as the same becomes due. Second party agrees to pay taxes on said premises and interest, to become due on the mortgage promptly, as the same becomes due.

"The two thousand dollars ($2000.00), and other things herein mentioned taken over by first party shall be in full satisfaction as aforesaid, of any community interest in property and in lieu of support money to the first party, and should installments on said note not be made when due, any unpaid installment shall draw interest from its due date at the rate of eight per cent. per annum. . . ."

Thereafter, and on the 28th day of August, 1933, counsel for plaintiff presented to respondent a proposed judgment for divorce which had been endorsed "approved as to form" by counsel for defendant and contained, among other things, the following provisions:

"That prior to the said hearing of this cause the plaintiff and defendant had entered into a settlement of all their property rights in the State of Arizona,

and that the said settlement is in the form of a written agreement and is a just settlement and should be made a part of this decree; now therefore it is

"Ordered, adjudged and decreed, that the bonds of matrimony heretofore and now existing between Truman Hardy Collins and Rachel Bell Collins, plaintiff and defendant respectively herein, be and the same are hereby dissolved forever, It is further

"Ordered, adjudged and decreed that the defendant herein, Rachel Bell Collins, shall have, and is hereby decreed to have, in lieu and satisfaction of alimony and/or support money, the following real and personal property, to-wit; . . .

"3. An undivided one-half interest in and to Lot 4, Block 2, in Princeton Heights, a subdivision to the City of Phoenix, Maricopa County, Arizona, subject only to the mortgage of record on said property. . . . It is further

"Ordered, adjudged and decreed . . . that said Truman Hardy Collins, plaintiff, shall at his own cost discharge the present and existing mortgage on the above described premises when it becomes due. That the said Truman Hardy Collins shall pay all taxes on said premises and interest to become due on the mortgage on said property as the same becomes due. . . .

"Done in open court this 28th day of August, 1933.
"HOWARD C. SPEAKMAN, Judge."

This judgment was duly filed in the office of the clerk of said Superior Court of Maricopa County on the said 28th day of August, 1933, but there is nothing in the minutes of the clerk of said Superior Court showing whether or not judgment was ever rendered in open court on said 28th day of August.

The first contention of relator is that the judgment aforesaid is void for the reason that it was not rendered in compliance with rule 7 of the Uniform Rules of the Superior Court. This particular contention might be disposed of under the principles set forth in the case of *Funk* v. *Fillman*, 44 Ariz. 263, 36 Pac. (2d) 574. In view, however, of the fact that for the first

time the effect of a failure to comply with rule 7 in case of a collateral attack upon a judgment is before us, and that many eminent counsel have joined in a brief as *amici curiae,* requesting that this particular point be determined, and since the first contention of relator can be properly disposed of thereon, and it is of considerable importance both to the bar of the state and to litigants appearing in the courts that the rule be settled, we have decided to determine the first question presented by the appeal upon the issue raised by *amici curiae.*

The Uniform Rules of the Superior Courts of Arizona were adopted by this court effective May 15, 1932, under the authority of section 3652, Revised Code of 1928, which reads as follows:

"*Rules of Practice.* The supreme court may make and adopt rules of practice for said court and for the superior courts. The clerk of the court shall print and distribute such rules and the expense shall be paid out of the appropriation for the supreme court."

These rules, in pursuance of the statute, were printed by the clerk of the Supreme Court and were distributed to each and every trial judge and practicing attorney in the state of Arizona. They contained the following preamble:

"These uniform rules for all the Superior Courts of the State of Arizona have been adopted by the Supreme Court of the state under the authority of section 3652, Revised Code of Arizona, 1928. From and after the date upon which they become effective, to-wit, May 15, 1932, they have the same force and effect as statutes, so far as they are applicable to any case, and all attorneys should familiarize themselves therewith and observe them carefully.

"Particular attention is called to the following rules and subdivisions: Rule IV, subdivision 5; Rule V, subdivisions 4 and 8, and Rule VII, as they are the ones which a failure to observe is most likely to cause the loss of an appeal in the Supreme Court."

Rule 7 referred to in the preamble reads, so far as material, as follows:

"No judgment shall be rendered by any Superior Court unless simultaneously with such rendition there shall be filed with the clerk a formal written judgment, signed by the trial judge. When the court has arrived at a decision in any case, it shall notify the parties, and the one, in whose favor the decision is to be shall prepare and present to the judge a proposed form of judgment within five days thereafter, and serve a copy thereof on the opposite party. Unless the opposite party shall endorse thereon the words 'Approved as to form,' or the equivalent, he shall have five days after such service in which to object to the form of judgment by filing a written objection and serving the same upon his opponent, and no judgment or decree shall be rendered or signed by the judge before the expiration of said five days. Failure to present objections as herein provided shall be considered as a waiver of any objections to the form of judgment presented to the trial court."

Shortly after the adoption of the rules, and notwithstanding the very careful and specific warning given to counsel by the preamble thereto, appeals began to appear in this court which showed that the trial bench and the bar of the state did not fully appreciate the effect of the rules and the warning which had been given. The first case in which we pointed out their purpose and effect was *Gillespie Land etc. Co.* v. *Hamilton,* 41 Ariz. 432, 18 Pac. (2d) 1111. In that case the particular rule which had been violated was section 6 of rule 4, which reads as follows:

"Copies of all pleadings except the original complaint must be served on the opposite party, or his attorney in the manner provided by law. Where an *ex parte* order is made, a copy of the same must be served on the adverse party or his attorney within three days after it has been made."

In our opinion we said:

"It is apparently the contention of appellee that this provision of the rule is jurisdictional and that if it is not observed the same result will follow as when the transcript is not filed within the sixty days set forth in the statute. While it is true that rules made by this court for the government of proceedings in the superior courts have the same force and effect as statutes in so far as they are applicable in any given case, it does not necessarily follow that even the failure to observe a statute regulating practice in all cases goes to the jurisdiction of the court. We think the true test in a matter of this nature is as follows: If the act which was omitted must be performed prior to or simultaneously with the act whose validity is involved, a failure to perform the omitted act renders the act done void, for in such case the doing of the latter is by the statute or the rules made dependent upon the performance of the former. Such, for example, would be an attempted rendition of a judgment without the filing therewith of a formal written judgment duly signed by the trial judge in accordance with rule VII of the Uniform Rules. In the present case, however, the act which was not performed, to wit, the service of a copy of an order, obviously is not required to be performed before or at the time the *ex parte* order is made, for the rules allow three days after the making of the order before the copy must be served. In such a case the failure to serve the notice is not jurisdictional and the order is valid, but if the party on whom the notice should have been served calls the matter to the attention either of the superior court or of this court in a timely manner and shows where he has been prejudiced thereby, the court in which such objection is properly made may either set aside the order or allow it to stand, upon such terms as justice in the particular case may require."

The next case which came before us, involving a construction of rules, was that of *Chiricahua Ranches Co.* v. *State*, 44 Ariz. 559, 39 Pac. (2d) 640, 642. There the objection was that rule 7 had not been complied with in that no formal written judgment had been signed and filed at the time the trial judge rendered judgment

in open court.    In discussing the rule and its application, we said:

"It is a cardinal rule of contruction of statutes that the intent of the legislative body, including the evil to be remedied by the statute, must be taken into consideration in determining its meaning.    *Denn* v. *Reid,* 10 Pet. 524, 9 L. Ed. 519; *Church of Holy Trinity* v. *United States,* 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; *Bank of Lowell* v. *Cox,* 35 Ariz. 403, 279 Pac. 257. We think it equally true that in interpreting court rules having the effect of statutes we should consider the same matters.    The purpose of the rule, which was formulated while all the present justices of the Supreme Court were on the bench, cannot be questioned. This court through a long series of cases, from *Kinsley* v. *New Vulture Min. Co.,* 11 Ariz. 66, 90 Pac. 438, 110 Pac. 1135, down to *Maricopa County Municipal Water Cons. Dist No. 1* v. *Roosevelt Irr. Dist.,* 39: Ariz. 357, 6 Pac. (2d) 898, has held repeatedly that the true judgment is that rendered from the bench in open court by the judge and not the written judgment generally, although not always, filed at some indefinite time thereafter.    The question as to when judgment is rendered is of vital importance, for the time within which an appeal can be taken or a motion for new trial made begins to run when the judgment is 'rendered.'    Sections 3661 and 3850, Rev. Code 1928.    In view of the fact that these formal written judgments were filed at any time which suited the convenience of the parties and the trial judges, and not necessarily at the same time as the actual rendition of judgment in open court, notwithstanding our decisions above cited, there was continued confusion among the members of the bar as to just when the time for appeal began to run, and many appeals were determined by the fact that the appellant had been in error as to the date of actual rendition of judgment.    This court in the case of *Moulton* v. *Smith,* 23 Ariz. 319, 203 Pac. 562, carefully explained the situation which existed in this respect, and suggested to the various superior courts of the state a manner in which such confusion could be avoided, and has referred to the cited case several times since.    Most of

the superior courts of the state gradually adopted the practice suggested, and in those courts no further difficulties have arisen. But a few of the trial judges were either unable to understand the situation or unwilling either to follow the plan we suggested or develop one of their own which would obviate the confusion. We therefore in the Uniform Rules for the Superior Courts of the state, effective May 15, 1932, provided that the court could not render judgment unless simultaneously there was filed a written judgment prepared and approved in such a manner that every detail thereof would be fully considered by the trial judge, before he rendered judgment. The evil to be remedied was the same in both jury and nonjury cases, to wit, the probability of the judgment rendered in open court and the written one signed by the judge bearing different dates, and the manner of remedying the evil applies to cases of every nature. We hold, therefore, that, since in the present case no written judgment was ever filed, the attempt of the court to render judgment on the verdict was void, and that the record fails to show that any valid judgment was ever rendered herein.''

And we referred to our language in *Gillespie Land etc. Co.* v. *Hamilton, supra.* The consideration of the same rule next arose in the case of *Ross* v. *White,* 46 Ariz. 304, 50 Pac. (2d) 12, 14. Therein we said:

''It is evident from the record that both sides treated this as an order for judgment, and while no assignment of error is directly framed on the failure of the court to follow the provisions of the rule in question pertaining to the filing of the final order and judgment, appellant argues the question in his opening brief, at page 51, under Assignment of Error No. VI.

''The question of the force and effect of these rules has been passed upon by us numerous times. The object and purpose of the particular rule is to secure to the parties full opportunity to consider and to object to and to be heard on the form of the order. This is a substantial right. Here the act omitted must have been performed prior to the act whose validity is involved. Hence, failure to perform the

omitted act, whether by court or counsel, renders the act void.

"Failure of the court to comply with the rule we hold to be fundamental error, which this court is bound to notice even in the absence of appropriate assignment or argument. In view of our conclusion on this point, it would serve no useful purpose to consider the remaining assignments of error. Since it appears that no valid judgment was ever rendered in the present case, there was nothing to appeal from, and it is necessary that the appeal be dismissed. The procedure which should be followed by either party desiring to bring the matter before this court for review is set forth in detail in the case of *Chiricahua Ranches Co.* v. *State,* 44 Ariz. 559, 39 Pac. (2d) 640."

And in *Ferguson* v. *Goff,* 46 Ariz. 260, 50 Pac. (2d) 20, we used the following language:

"This matter is before the court on a motion to dismiss the appeal. Ordinarily matters of this nature are disposed of without the formality of a written opinion, but in view of the fact that it is evident that some of the attorneys and trial judges of the state have not yet acquainted themselves with the Uniform Rules of the Superior Court, effective May 15, 1932, and the decisions of this court thereon, we again remind the bench and the bar that these rules are mandatory in their nature.

"In the case of *Chiricahua Ranches Co.* v. *State,* 44 Ariz. 559, 39 Pac. (2d) 640, we discussed at length the purpose of the Uniform Rules and their nature, and particularly the circumstances which led up to the adoption of rule VII and the effect of that rule. Anything further which we might say upon this subject would be a mere matter of repetition, and we therefore merely call the cited case to the attention of the trial judges and the members of the bar, with the suggestion that they read and ponder it carefully. If they will do so, it will save a great deal of expense and delay to litigants, and, perhaps, even more serious consequences in some cases. It appearing in the record of the present case that no valid judgment has

ever been rendered therein, the appeal was prematurely taken, and the motion to dismiss is granted.''

Our latest expression of opinion on this rule is found in *Harrington* v. *White, ante,* p. 291, 61 Pac. (2d) 392, wherein we had before us the same question as in *Ross* v. *White,* and ordered the appeal dismissed.

It will be seen upon examining this list of cases that we have uniformly held in each one of them that the failure to observe rule 7 was fatal so far as the judgment was concerned, and that the question could be raised on appeal, even in the absence of appropriate assignments of error or argument. It will be noted, however, that in each and all of these cases the question was raised on a *direct appeal* from a questioned judgment or order, and not by a *collateral attack,* and *amici curiae,* while admitting that the effect of a violation of rule 7 when directly attacked on an appeal has been definitely and finally settled by this court, urge that the question has never been before us as to what its effect is when the attack is a collateral one, and suggest that we have inadvertently used language in these cases which, if construed literally, would give an effect to rule 7 which is contrary to sound logic and authority, and, indeed, not authorized by the provisions of our Constitution establishing the jurisdiction of the various courts.

We have examined carefully the brief submitted and the argument of counsel, and agree with the general conclusion reached therein. The present situation is but another proof of the truth of the old adage that ''even Jove nods'' at times, and that appellate courts sometimes fail to realize that the exact meaning of their language, reaching a correct result when limited in its effect to the precise case before them, leads to an improper conclusion when applied to another and entirely different state of affairs. There

are many cases in the reports where courts have used the word "void," where a close analysis of the facts shows that "voidable" is what is really meant, and there have been instances where appellate tribunals have used the word "jurisdiction" when, in reality, they meant, not the *power* to perform a certain act, but the *performing of it when it was prohibited,* a very different thing. The technical meaning of the word "jurisdiction," particularly as applied in a case involving a collateral attack on a judgment, has been discussed by us many times. The case of *Tube City Min. & Mill. Co.* v. *Otterson,* 16 Ariz. 305, 146 Pac. 203, L. R. A. 1916E 303, goes into the matter very fully and points out that when jurisdiction in this sense is considered, there are three things which must appear: (a) Jurisdiction of the person; (b) jurisdiction of the subject-matter; and (c) jurisdiction of the court to render the particular kind of a judgment in the instant case which it did render, and that if these three elements occur, the judgment is invulnerable as against collateral attack, except for fraud.

In the cases in which we have discussed the effect of the rules of court, the question of collateral attack on a judgment was never involved, and we had no reason to consider the meaning of the word "jurisdiction" in the sense in which it is applied in such cases. Doubtless it would have been more strictly correct if, instead of using the words "jurisdiction" and "void," we had said "right" and "voidable," for the effect of rule 7 in each of the cases in which the question was raised would have been the same had we used the more strictly accurate language.

■■ This court, of course, has no power to limit the constitutional jurisdiction of any of the other judicial tribunals established by the Constitution or statutes adopted in pursuance thereof, nor have nor

had we the slightest intention or desire of so doing. It would, therefore, have been absurd for us to say that rule 7 affected the jurisdiction of the person, of the subject-matter and the *power* to render the particular judgment in any of the cases above cited where the effect of the rule has been involved. The reason for and the purpose of rule 7 is very fully explained in *Chiricahua Ranches Co.* v. *State, supra,* and it is obvious therefrom that it was meant only to apply to cases on appeal where the judgment was attacked directly, and our holding was, in effect, that a claim that the judgment was voidable for violation of the rule, because the superior court had been forbidden to render any judgment under the circumstances, might be raised by an appellant at any time and in any manner, or that the court, in such a proceeding, might consider it of its own motion. This is the extent to which we are authorized to go, and this is the extent to which we have gone, and no further.

But, it may be contended, even this is too far; that the rules should be considered as directory merely and this court should insist that the same principle be applied to raising an objection that the judgment was not rendered in accordance with rule 7 that we do to objections to the admission of evidence, to the challenging of jurors, and other similar errors, to wit, that unless objection is made in the lower court, is presented in the motion for new trial and assigned as error in this court, it has been waived. It is true, of course, that where a rule is made for the benefit of litigants, and not for that of the public, it may be waived by the parties. *Day* v. *Board of Regents,* 44 Ariz. 277, 36 Pac. (2d) 262. But the waiver of a rule made for their personal benefit by interested parties is a very different thing from the waiver of a rule made primarily for the benefit and protection of the

court itself. We have shown clearly in *Chiricahua Ranches Co.* v. *State, supra,* that it was primarily for the protection of the appellate court and not for the protection of the litigants that it was adopted. The ordinary rule in regard to waiver, therefore, does not apply, for rules must be construed in the light of the purpose for which they were adopted. We have, nevertheless, in our zeal to see that the rights of litigants were protected, expressly provided in the Uniform Rules for the Superior Courts, as well as in ours, that each court may waive any particular rule meant for its own guidance in a manner specifically set forth in the rules. But where the Uniform Rules of the Superior Court have been violated without the lower court itself providing for the rule being waived, in the manner set forth in the rules themselves, this court will not and cannot make the exception to the rule when the case is before us on appeal which the superior court might have made when the case was before it.

The question of the nature of court rules and whether or not they are merely directory so that the court may, if it desires, refuse to apply them, or whether they are mandatory, and when a violation thereof is brought to the attention of the court in a direct proceeding the rule must be enforced, has often been before the courts. The general rule is that, in the absence of fraud, rules are binding alike upon the court and upon the litigants and cannot be dispensed with to meet the exigencies in a particular case or to meet an apparent hardship, except when the rules themselves provide a method for such suspension, *and then only in the manner so provided. Drew* v. *Hogan,* 26 App. D. C. 55, 6 Ann. Cas. 589; *Hoodless* v. *Jernigan,* 46 Fla. 213, 35 So. 656; *Owens* v. *Ranstead,* 22 Ill. 161; *Magnuson* v. *Billings,* 152 Ind. 177, 52 N. E. 803;

*Burlington & M. R. R. Co.* v. *Marchand,* 5 Iowa 468; *State* v. *O'Malley,* 115 La. 1095, 40 So. 470; *Maberry* v. *Morse,* 43 Me. 176; *Wall* v. *Wall,* 2 Har. & G. (Md.) 79; *Thompson* v. *Hatch,* 3 Pick. (Mass.) 512; *Maloney* v. *Hunt,* 29 Mo. App. 379; *Haley* v. *Eureka County Bank,* 20 Nev. 410, 22 Pac. 1098; *Ogden* v. *Robertson,* 15 N. J. Law 124; *Coyote G. & S. M. Co.* v. *Ruble,* 9 Or. 121; *Fanning* v. *Fly,* 2 Cold. (Tenn.) 486; *Baker* v. *State,* 84 Wis. 584, 54 N. W. 1003. The reason for this is that while strict enforcement of the rules may work serious inconvenience to individual litigants, the evils that would arise from a vacillating and uncertain operation of such rules are greater than those that would be obviated by a lax operation. *Walker* v. *Ducros,* 18 La. Ann. 703. It is true that there are many cases where it is held that it is discretionary with the court whether they shall be enforced where it appears they are working an inconvenience, or that an injustice will be perpetrated. This is based on the ground that as the court originally had the power to make special rules, so it has, notwithstanding its general rules, the power to make a special rule in each case fitting the circumstances of the particular case, and exempting it from the old general rule. *Deming* v. *Foster,* 42 N. H. 165. But we know of no case which goes to the extent of holding that a lower court may consider as discretionary the enforcement of a rule adopted for its procedure by a higher tribunal, or where the higher court has refused, on appeal, to enforce such a rule. In the case of *Rio Grande Irr. etc. Co.* v. *Gildersleeve,* 174 U. S. 603, 19 Sup. Ct. 761, 763, 43 L. Ed. 1103, the Supreme Court of the United States said:

"As no discretionary power was reserved to the trial judge, he could not dispense with this rule of court. As was said in *Thompson* v. *Hatch,* 3 Pick. [Mass.] 512:

" 'A duly-authorized rule of court has the force of law, and is binding upon the court as well as upon parties to an action, and cannot be dispensed with to suit the circumstances of any particular case. . . . The courts may rescind or repeal their rules, without doubt, or, in establishing them, may reserve the exercise of discretion for particular cases. But the rule, once made, without any such qualification, must be applied to all cases which come within it, until it is repealed by the authority which made it.' "

That court held there was no discretionary power in the trial judge and that the appellate court which had prescribed the rule might rescind or repeal it, but, once it was made, must apply it, as made, to all cases which fell within it until it was repealed by the authority which made it.

If, therefore, it should appear at a later time that rule 7, as limited by us in this opinion to direct attacks made on appeal, is too rigid or is working inconveniences greater than the benefits, we may, and should, later modify it, or even abolish the rule, but so long as it is the rule for the superior courts it must be followed by them and applied by us as written, and it is not discretionary, but is mandatory, unless suspended or modified in the manner set forth by the rules themselves.

We hold, therefore, that this being a collateral attack upon the judgment, the objection that it was not rendered in accordance with rule 7 cannot be raised in this proceeding.

The second question is whether defendant could be punished for contempt by the superior court for not discharging the mortgage and paying the taxes upon the premises referred to in the judgment. It is contended on behalf of relator that the provision of the judgment requiring him to pay the mortgage and taxes is not, within the meaning of the law, "perma-

nent alimony," the payment of which may be enforced by contempt proceedings, but rather, if anything, a disposition of the property of the parties, and, therefore, enforceable only, if at all, by an ordinary action of debt. It is the position of respondent that this part of the judgment is, in effect, an award of alimony. That a valid award of alimony may be enforced by contempt proceedings is unquestioned. *Van Dyke* v. *Van Dyke*, 125 Ga. 491, 54 S. E. 537; 19 C. J. 299, and cases cited. On the other hand, it is equally without doubt that the payment of an ordinary debt may not be enforced in that manner. Section 18, art. 2, Constitution of Arizona. Even if this provision be considered as an attempt to award alimony, as contended by respondent, we think it may not be enforced by contempt proceedings, for under our statute and the decisions of this and other states having similar laws, the trial court had no jurisdiction to award alimony in this manner. Section 2187, Revised Code of 1928, reads, in part, as follows:

"*Permanent Alimony; custody of children; costs; changing name.* In the final decree of divorce the court may, in addition to the division of the common property of the parties, or in lieu thereof, direct the husband to pay *to the wife* such amounts as may be necessary for the support and maintenance of the wife, and the minor children of the parties whose custody may be awarded to the wife, as may be necessary or proper, and may decree that said amount may be paid in one sum or in instalments." (Italics ours.)

In the recent case of *Brown* v. *Brown*, 39 Ariz. 542, 8 Pac. (2d) 452, 453, the trial court rendered a judgment requiring that the defendant pay to the plaintiff, his wife, certain sums of money for medical attention for the minor son of the parties, and the expenses of litigation, and ordered further that he pay directly

to the attorneys of his wife a certain fee for their services in defense of the action. In our opinion we stated as follows:

"The defendant has appealed from said order or judgment and assigns as errors therefor the lack of jurisdiction in the court to direct him to pay money to plaintiff's attorneys, they not being parties to the action. This assignment appears to be good. Section 2186 of the Revised Code of 1928 vests discretion in the trial court during the pendency of a divorce action to require the husband to pay as alimony money necessary for the prosecution of the action, or for attorneys' fees, or the support and maintenance of the wife and minor children of the parties. Under a statute very similar to section 2186 the California courts have decided that an order to the husband to pay attorneys' fees direct to counsel is void for want of jurisdiction to enter it. In *Pennell* v. *Superior Court*, 87 Cal. App. 375, 262 Pac. 48, 49, it is said:

" 'The rule is well settled that a judgment or order for the payment of fees directly to an attorney for one of the parties is a judgment in favor of persons not parties to the suit, and for that reason irregular and void. *Sharon* v. *Sharon,* 75 Cal. 1, 39, 16 Pac. 345; *In re Levinson,* 108 Cal. 450, 458, 41 Pac. 483, 42 Pac. 479; *Sullivan* v. *Gage,* 145 Cal. [759] 770, 79 Pac. 537; *Chavez* v. *Scully,* 62 Cal. App. 6, 216 Pac. 46.'

"We think in reason that any allowance for attorneys' fees, or for the prosecution of her action, or for the support and maintenance of the minor children while in the care and custody of the wife, is for the benefit of the wife, and that the order or judgment therefor should run in her favor. It is also true that her attorneys are not parties to the action and as such amenable to the orders and directions of the court, or entitled to the awards or judgments of a party."

And the California cases cited in the opinion are emphatic to the same effect. In the leading case of *Sharon* v. *Sharon,* 75 Cal. 1, 16 Pac. 345, 362, the court, in construing a statute not so positive in its terms

as ours that alimony must be paid *directly* to the wife, said as follows:

"Section 137 of the Civil Code provides, 'While an action for divorce is pending the court may in its discretion require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action.' There can be no doubt the order must require the alimony to be paid to the *wife,* and it seems equally plain it was intended that the money ordered to be paid, as necessary to prosecute or defend the action, should be ordered paid to her. Section 137 regulates the matter in this state, and that section contemplates an order to pay to the wife. It would seem that where the statutes are silent on the subject, temporary alimony and suit money can be awarded to the wife. 2 Bish. Mar. & Div., § 396. But when awarded, either by statute or upon general principles, 'suit money' is awarded to her; and by section 137 counsel fees, if ordered to be paid, are ordered as part of her necessary expenses for prosecuting or defending the action for divorce. There is a great deal of American authority that the wife's legal agent cannot recover compensation of the husband, in a distinct action, for his services rendered her in a suit for divorce. Cases cited to section 391, 2 Bish. Mar. & Div. He certainly cannot recover a judgment for such services, past and contemplated, upon a motion in the suit for divorce. The order here was a direct judgment for money in favor of persons not parties to the suit, and to that extent was irregular and void."

Had the order been, in the present case, that relator pay to his wife a specific sum to be used by her in meeting the mortgage and taxes on the premises, it might be that the order could be sustained as alimony, although we express no opinion on this point, but certainly in view of all the authorities, an order to pay money to third parties, to wit, the holder of the mortgage on the premises, and to the tax collector of Maricopa county, is void for want of jurisdiction of

the court to make it. Such being the case, of course, the court could not punish the relator for being in contempt of an order which it had no jurisdiction to make.

It is ordered that the order of the Superior Court of Maricopa County, adjudging relator to be in contempt for failure to pay the mortgage and taxes, as aforesaid, is set aside for want of jurisdiction on the part of said court to make the order.

McALISTER, J., concurs.

ROSS, J.—I concur in the result. The reasons given for holding relator not punishable for contempt are sound and in accord with the former rulings of this court.

I believe the majority opinion absolutely right in holding that a failure to observe the terms of rule 7 is not jurisdictional rendering the judgment void. I think the opinion, since it has gone into the matter, should go further and let litigants know that this court will regard inadvertent omissions to follow rule 7 as mere irregularities, not reviewable on appeal unless brought to the attention of the trial court and a ruling had thereon, and in no event a ground for reversal unless prejudice has been suffered by the party complaining.

It may be that this court can refuse to review an appeal on the ground that rule 7 was not followed, whether the parties complain of such irregularity or not, or whether anybody's rights have been harmed thereby, but such action would be very unreasonable, as well as arbitrary, and hardly comport with the dignity of the court.

See dissenting opinions in *Harrington* v. *White, ante,* p. 291, 61 Pac. (2d) 392, and *Davis* v. *Chilson, ante,* p. 366, 62 Pac. (2d) 127, just decided.