254 P.2d 435

**LA BONNE v. FIRST NAT. BANK
OF ARIZONA et al.**

No. 5665.

Supreme Court of Arizona.

March 16, 1953.

Rehearing Denied April 28, 1953.

Marvin Johnson, of Phoenix, for appellant.

Clark & Clark, of Phoenix, for appellee First Nat. Bank of Arizona.

William C. Eliot, of Phoenix, for appellee Valdenegro.

Carl Tenney, of Phoenix, for appellee Rutherford.

UDALL, Justice.

This is an appeal by contestant, Jeanne LaBonne, from a judgment dismissing with prejudice her petition to revoke the last will and testament of Jean Orteig, deceased, which had been previously admitted to probate.

Jean Orteig, a recluse bachelor approximately ninety years of age, died testate on June 8, 1949. His last will and testament was dated June 4, 1948 and it was admitted to probate on August 10, 1950. The appellee, First National Bank of Arizona, was appointed and qualified as administrator with the will annexed. The whole estate was appraised at $6,516.26. By the terms of the will testator bequeathed to contestant Jeanne LaBonne, the sum of $1; a similar amount to J. B. Marris; $2,000 was left to Mrs. Jennie Valdenegro, a neighbor who it was stated had "faithfully cared for me during the past year"; $2,000 was bequeathed to Colonel Charles H. Rutherford (the attorney who drew the will) "* * * whose legal services over a period of considerable time, have proved both satisfactory and beneficial to me * * *"; and a former employee and friend, Mrs. Harriet Keegan of Prescott, was named as the residuary legatee and devisee.

The contestant, a niece of decedent, who by a prior will had been named as principal beneficiary, was originally from Toulouse, France, but when the contest was initiated was living in New York City. For many years prior to his death decedent had corresponded with her in France and early in the year 1948 he advanced money for her expenses to visit him in Arizona, with the thought that she would either care for him here or else take him back with her to France.

This contest of the validity of the will, after probate, was initiated within the year provided for under Section 38–216, A.C.A. 1939. The amended petition (after reciting the jurisdictional facts) alleged: (a) the incompetency of the decedent to make a will, and (b)

. "* * * that the said Jean Orteig was coerced into signing the said instrument by the false and fraudulent representations of the said Charles H. Rutherford and Jennie Valdenegro; that thereby, and not otherwise, the

said Jean Orteig was induced to execute the said pretended will * * *."

The separate responses or answers of the administrator and legatees Rutherford and Valdenegro, in effect, constitute general denials. A jury was demanded by the contestant, and these were the issues at the trial held on June 14–15, 1951.

At the close of contestant's proof counsel for respondents moved for a directed verdict upon the grounds (1) that there was not sufficient proof to show incompetency at the time of the execution of the will, and (2) " * * * that there has not been shown any iota of evidence on the subject of undue influence * * * as alleged in the petition * * *." The court sustained the motion on the first ground by refusing to submit the question of mental capacity for determination of the jury and this ruling has not been assigned as error. The motion based on the second ground was denied and, after all of the evidence was adduced, the matter of undue influence was submitted to the jury upon this single interrogatory:

"Was the deceased, Jean Orteig, on June 4th, 1948, at the time he executed the instrument purporting to be his last will and testament acting under the coercion and undue influence of Charles H. Rutherford or Jennie Valdenegro? (Answer yes or no)."

Nine of the twelve jurors answered "Yes" to this query; contestant moved for judgment on the verdict, which motion was taken under advisement.

The appellees joined in timely moving for judgment notwithstanding the verdict (which we shall treat as properly raising a motion under rule 50(b), Rules Civ.Proc., A.C.A.1939, § 21–1015), upon the ground and for the reason:

" * * * that the evidence does not in any way support the verdict, but the evidence and all the facts and circumstances * * * clearly show that the said Jean Orteig, at the time of making the Will, was not acting under the undue influence or coercion of either Jennie Valdenegro or Charles H. Rutherford."

This motion was granted on November 14, 1951. Objection to the form of judgment as first presented was sustained and the following minute order was made on December 3, 1951, viz.:

" * * * Amended Order granting motion for Judgment notwithstanding the verdict for the reason that the evidence shows there was only partial invalidity of the Will and by reason of such partial invalidity the plaintiff did not take under this will and is therefore not an interested party."

Written judgment in accordance therewith was entered on December 17, 1951. It will be noted that the minute order and judgment (which were entered some six months after the trial) are based upon the theory

of a partial invalidity of the will, whereas the motion for an instructed verdict and motion for judgment n. o. v. were in conformity with the issues raised by the pleadings, being predicated upon a total lack of evidence to establish that the testator in making his will had been acting in any manner under· the undue influence or coercion of respondents Valdenegro and/or Rutherford.

Notice of appeal was given and the matter is submitted upon the following assignment of error, viz.:

"Assignment of Error

"The trial Court erred in granting judgment notwithstanding the verdict and in refusing to enter judgment in favor of appellant, for the reason that the Arizona Law is to the effect that the common-law doctrine of devisavit vel non applies and at all times has applied during the period under consideration herein."

The appellees moved to dismiss the appeal because of the insufficiency of the assignment as they maintain no question is thereby presented for our determination. We reserved a ruling on the motion pending presentation on the merits. The Latin term "Devisavit Vel Non" is defined in Black's Law Dictionary, Third Edition, as:

"In practice. The name of an issue sent out of a court of chancery, * * *, to a court of law, to try the validity of a paper asserted and denied to be a will, to ascertain whether or not the testator did devise, or whether or not that paper was his will. (Citing cases.)"

While the assignment is poorly drawn, we are of the opinion that it is sufficient to raise the question of did testator validly devise or not. Hence the motion to dismiss the appeal is denied.

Apparently the trial court granted judgment n. o v. for the appellees after being persuaded that the contest was one raising the issue of the partial invalidity of the will as a result of undue influence. The court in reaching this conclusion obviously followed the majority rule regarding partial invalidity resulting from undue influence—which is that—where the issues are so framed—parts of a will may be held valid and enforceable notwithstanding the fact that other parts have been affected by undue influence and are invalid; provided, however, that the parts so affected are separable, so that the will remains complete and intelligible in itself. Annotation, 69 A.L.R. 1129; 68 C.J., Wills, sec. 448; In re Webster's Estate, 43 Cal.App.2d 6, 110 P.2d 81, 111 P.2d 355.

Contestant urges on appeal (and in doing so is consistent with her position in the trial that the entire will was the result of undue influence) that our statutes, section 38–210 and section 38–213, A.C.A.1939, as construed in the case of In re Hesse's Estate, 62 Ariz. 273, 157 P.2d 347, places us with the minority, which minority rule is

laid down in Corpus Juris, supra, as follows:

"\* \* \* Under a statute providing that, in a will case, the issue shall be made up whether the writing produced be the will of testator or not, it has been held that the will produced must be free from undue influence in its entirety or it is not his will at all."

See Snyder v. Steele, 304 Ill. 387, 136 N.E. 649, 28 A.L.R. 1; McCarthy v. Fidelity Nat. Bank & T. Co., 325 Mo. 727, 30 S.W. 2d 19, 69 A.L.R. 1122. We do not agree with contestant's interpretation as the Hesse case, supra, is readily distinguishable. The issue of partial invalidity of one or more legacies because of undue influence was not in the case. The statement in the Hesse case stating that the jurisdiction of the court is limited in a will contest to a determination of "the factum of the instrument" [62 Ariz. 273, 157 P.2d 349], known at common law as the issue *devisavit vel non,* is correct where, as there, the issue of undue influence was directed to the entire will.

In the instant case we are of the opinion that it would be dicta for us to either approve or disapprove of the rule as to partial invalidity applied by the trial court, because, as we have already shown, the question of the invalidity of the specific bequests to Valdenegro, Rutherford, or to any of the other legatees, was not made the issue of the contest either by the pleadings or by submitting to the jury special interrogatories thereon. It would seem that the matter of partial invalidity was an afterthought of counsel for appellees or they would have requested that interrogatories on this issue be submitted. It is also significant that the written instructions are general in their nature; there is not the slightest reference or declaration that the will might be found by the jury to be invalid as to certain bequests on account of undue influence but valid as to all others.

Our statute, 38–210, A.C.A.1939, is to the effect that certain *issues,* including freedom from undue influence, framed by pleadings as set forth in the statute, must be tried to a jury if a jury is demanded, otherwise by the court. In re Hesse's Estate, supra; In re Hayward's Estate, 65 Ariz. 228, 178 P.2d 547. The statute does not purport to define or enumerate all the issues that may be raised upon a contest of a will, but merely the issues that must be submitted to a jury when demanded. Our statute section 38–211, A.C.A.1939, requires the jury to return a "special verdict upon the *issues* submitted to them". For a case where the pleadings raised the issue of undue influence generally and the question of partial invalidity was properly submitted to the jury by special interrogatories, see, In re Webster's Estate, supra.

The question arises therefore, was judgment n. o. v. properly entered and may it stand as against the special verdict of the jury entered pursuant to section 38–211, A.C.A. 1939?

Before the adoption—in the year 1940— of the new rules of civil procedure, a trial court in Arizona could not render judgment notwithstanding the verdict because it deemed the verdict unsupported by the evidence, the court's jurisdiction being limited in such a case to the granting of a new trial. Durham v. Firestone Tire, etc., Co., 47 Ariz. 280, 55 P.2d 648; Welch v. United Mutual Ben. Ass'n, 44 Ariz. 198, 36 P.2d 256.

By Rules 50(a) and 50(b), Rules of Civil Procedure (now appearing as sections 21–1014 and 21–1015, A.C.A.1939), the superior court is empowered, in certain instances, to set aside the verdict and any judgment entered thereon after the reception of the verdict. The pertinent parts of these rules are:

"* * * A motion for a directed verdict shall state the *specific grounds* therefor." Rule 50(a).

"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury *subject* to a later determination of the *legal questions* raised by the motion. Within ten (10) days after the reception of a verdict, a party *who has moved for a directed verdict* may move to have the verdict and any judgment entered thereon set aside and to have judgment entered *in accordance with his motion for a directed verdict;*

* * *. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. * * *" (Emphasis supplied.) Rule 50(b).

These sections enlarge the power of the court so that the court as well as being authorized to order a new trial may "direct the entry of judgment as if the requested verdict had been directed." See, McCauley v. Steward, 63 Ariz. 524, 164 P. 2d 465; Ramirez v. Chavez, 71 Ariz. 239, 226 P.2d 143; and Ward v. Johnson, 72 Ariz. 215, 232 P.2d 960. The authority to set aside the verdict exists, however, only where there has been a motion for directed verdict made prior to submitting the case to the jury, and only upon the same grounds specifically set out in the motion for a directed verdict. The former without the latter is not sufficient for the only questions submitted subject to a later determination are the "legal questions" raised by the motion for a directed verdict as determined by the grounds specifically set out in the motion. See, Ryan Distributing Corp. v. Caley, 3 Cir., 147 F.2d 138. In the case of Virginia-Carolina Tie & Wood Co., Inc., v. Dunbar, 4 Cir., 106 F.2d 383, 385, the court refused to consider an assignment of error where the trial court had not directed a verdict since no grounds for the motion were stated. While holding technical precision in stating the grounds was

not necessary, it is required to state specific grounds therefor, sufficiently to apprise the court fairly as to movant's position. The court stated:

"* * * although plaintiff's counsel did move for a directed verdict and excepted to the refusal of the court to grant same, the record does not show that they stated any grounds of motion, as expressly required by rule 50(a) of the Rules of Civil Procedure [28 U.S. C.A.]. Prior to the adoption of this rule, there was conflict in the decisions of the federal courts as to the necessity for stating the grounds of a motion for directed verdict. * * * (Omitting cases.) Rule 50(a) has settled that conflict, however, * * *. And we think it important that this requirement of the rule be observed, particularly in view of the enlarged powers granted the court with respect to such motions by rule 50(b), as otherwise judgment might be entered on such a motion after the close of the trial and on a ground which could have been met with proof if it had been suggested when the motion was made. * * *"

The oral motion for directed verdict made during the trial, as well as the later written motion for judgment n. o. v. fairly apprise the court of the appellees' position, i. e., that there was no evidence of any undue influence or coercion. There was nothing, however, in either motion to support appellees' present position upon which the judgment appealed from was based, i. e., that the evidence shows a partial invalidity as a result of undue influence and coercion.

We hold after examining the entire record before us, the pertinent parts of which have been set out, that the issue of partial invalidity was not framed by the pleadings; that the case was not tried upon that issue; that the jury in answer to the only interrogatory submitted to it in effect found the entire will to be tainted and the result of the undue influence of appellees Valdenegro and Rutherford. The court erred therefore in setting aside the verdict and entering such judgment for the reason that the judgment entered was not "in accordance with" the motion for directed verdict.

The judgment is reversed with directions to vacate the order dismissing the contest and to enter judgment revoking the will in conformity with the special verdict of the jury.

Judgment reversed with directions.

STANFORD, C. J., and PHELPS and LA PRADE, JJ., concur.

WINDES, J., being disqualified, the Honorable GORDON FARLEY, Judge of the Superior Court of Santa Cruz County, was called to sit in his stead.

FARLEY, Superior Judge (specially concurring).

While I am persuaded that the conclusion reached by the majority is sound law,

I am nevertheless compelled to observe that the issue upon which the case is decided, to wit: a noncompliance with Rules 50(a) and 50(b), was not raised in the briefs before this court.

The sole assignment of error is set out in the majority opinion, and is, as termed therein, poorly drawn. In support of that assignment appellant urges this court to adopt his proposition of law, which is as follows:

"If a will is prepared by a testator who is the victim of undue influence, the entire will is void by that fact, even though he who produced such undue influence is one of several beneficiaries."

As I interpret the assignment of error and the proposition of law, which must be read together to determine the error of which appellant complains, they seek to align this state with the minority rule which rejects the theory of partial invalidity of wills because of undue influence. Nowhere in the brief of appellant is a procedural error raised, or even alluded to, upon which the case is being reversed.

The rule in most jurisdictions is that appellate courts will not go beyond the assignments of error to point out any error committed by a lower court, except in capital cases. Some of the predecessors on this court in their commendable desire to do justice in a particular case have inadvertently, I believe, gone beyond the issues raised on appeal and sua sponte pointed out errors which were termed fundamental although not assigned by appellant. See the cases of State Consolidated Publishing Co. v. Hill, 39 Ariz. 163, 4 P.2d 668; Ross v. White, 46 Ariz. 304, 50 P.2d 12; Collins v. Superior Court, 48 Ariz. 381, 62 P.2d 131; and Gibbs v. Basham, 53 Ariz. 357, 89 P.2d 630.

Rule X of this court requires that assignments of error must *specifically* state the ground for seeking a reversal, and this court has repeatedly dismissed appeals for failing to observe that rule. To require on the one hand a strict observance of Rule X and on the other hand for this court to sua sponte point out error, except of course where there is some justification as in capital cases, is to my mind inconsistent and puts the appellee at a distinct disadvantage, and certainly tends to place a premium on incompetence and to encourage slipshod appeals.

Because, as stated at the outset, I believe the conclusions reached by the majority are sound law, and because this court has ample precedent to go outside the assignments to point out error of the trial court, I am obliged to join in the result.