## SPRECKELS *v.* BROWN.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF HAWAII.

No. 61.  Submitted December 11, 1908.—Decided February 1, 1909.

Although the Supreme Court of Hawaii has not authority to enter a
    final judgment which is reviewable by this court when the case is
    before it on bill of exceptions it may do so when a writ of error has
    brought up the judgment. *Cotton* v. *Hawaii*, 211 U. S. 162, distin-
    guished.

Tax returns are not conclusive as to values.  Where it sufficiently ap-
    pears by affidavits in the record and in this court that the value of
    the land involved exceeds the jurisdictional amount, the case will not
    be dismissed on a motion based on lower valuations in tax returns.

In Hawaii a disseisee may convey to a stranger, and a deed purporting
    to remise, release and forever quit claim amounts to a conveyance
    of all the grantor's interest in the property at the time.

While the words "sea beach" taken in a strict sense might not include
    a small strip outside of the metes and bounds specified in an Hawaiian
    deed, where by natural interpretation the grant conveyed all the up-
    land to low water mark, and with it all accretions, this court will not
    reverse a ruling of the lower court to that effect.

In a deed to property in Hawaii monuments shown in a diagram held to
    prevail, in case of discrepancy, over metes and bounds.

The party having the burden of proof is not entitled to a reversal be-
    cause the jury was charged to find against him unless satisfied that

he had clearly proved his case even though the word "clearly" be slightly overemphasized. *Ward* v. *Cochran*, 150 U. S. 597.

Where articles indicating the judge's leanings appear in a newspaper, and one of the parties informs the judge that he need not give any instructions to the jury as to reading the paper, the verdict cannot be set aside because similar articles subsequently appeared in other papers which may have been read by members of the jury.

The admission of affidavits of jurymen to effect that they had not been influenced by newspaper articles held to be immaterial, the order overruling the motion for new trial being right on other grounds.

18 Hawaii, 91, affirmed.

THE facts are stated in the opinion.

*Mr. Mason F. Prosser* and *Mr. Robbins B. Anderson* for plaintiffs in error.

*Mr. Charles A. Brown*, defendant in error, *pro se.*

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action of ejectment brought by the defendant in error, Brown. He had a verdict and judgment, subject to exceptions. These were taken to the Supreme Court of Hawaii by writ of error, the Supreme Court overruled the exceptions and affirmed the judgment below, and the case then was brought to this court. A motion to dismiss was made, on the grounds that the Supreme Court had no authority to enter final judgment, that it does not appear that the property in question is worth five thousand dollars, and that the plaintiffs in error are estopped to say that it has that value by their tax returns, under oath, valuing it at a less amount. This motion can be disposed of in a few words. For the first ground, *Meheula* v. *Pioneer Mill Co.*, 17 Hawaii, 91, is relied upon. See also *Cotton* v. *Hawaii*, 211 U. S. 162; *Hutchins* v. *Bierce*, 211 U. S. 429. But those cases deal with proceedings upon a bill of exceptions alone. Here there was a writ of error, which, as the Supreme Court of Hawaii pointed out in the decision cited, brings up the judgment. As to the value of the land in dispute,

it sufficiently appears by affidavits in the record and in this court, in which also there is an attempt to explain the low valuation in the tax returns. *Red River Cattle Co.* v. *Needham,* 137 U. S. 632, 635, 636. The tax returns in any event are not conclusive. *Willcox* v. *Consolidated Gas Co., ante,* p. 19. Therefore the motion to dismiss is overruled.

The suit is for two parcels of land, mostly accretions, on the ocean side of Front street, Hilo, in Hawaii. The plaintiffs in error are admitted to own the upland on the other side of the street. For the first question raised upon the merits it is enough to say that, subject to other questions to be discussed, these parcels formerly belonged to Benjamin Pitman, together with the upland; that after conveyance by him of the latter, they passed to his wife by devise, and that she, while disseised, executed a deed purporting to "remise, release and forever quit claim" to the defendant in error, Brown, a stranger, "all (her) right, title and interest in and to" the premises. The plaintiffs in error contend, and asked rulings to that effect, that a deed in that form by a disseisee to a stranger is void. We should be very slow to import into Hawaii a purely historical and uselessly technical reminiscence, when the courts of the Territory say that their usage has neglected it. Here as there the words quoted carry, even to professional minds, the notion of conveyance, as fully as the words give and grant. They suggest a possible infirmity of title, or an unwillingness of the grantee to take risks, but they are not limited in popular understanding to a release to a party already in. They hardly ever suggest that idea. Especially where as here the conveyance is upon a substantial consideration ($5,000), it ought to be upheld; as it would be upheld in a jurisdiction which has furnished its share of precedents to Hawaii.

In Massachusetts the principle that a deed of quitclaim and release is sufficient to pass all the estate that the grantee could convey by a deed of bargain and sale early was established by judicial decision. *Pray* v. *Pierce,* 7 Massachusetts, 381; *Russell* v. *Coffin,* 8 Pick. 143, 153; *Freeman* v. *McGaw,* 15 Pick. 82,

86, 87. See *Moelle* v. *Sherwood*, 148 U. S. 21, 28. And this principle was embodied in the first revision of the statutes, the section having been inserted by the Commissioners "to remove all doubts as to a mode of conveyance, which long has prevailed throughout the Commonwealth; and to which there is no objection, but what is merely technical and formal." Rev. Stats. of Mass., 1836, p. 405, c. 59, § 5, and Commissioners' Notes. Rev. Laws of Mass., 1902, p. 1222, c. 127, § 2. (It appears, in his handwriting, that this note was written by Judge Jackson, who was especially learned in real property law.) The principle is carried so far that a release of the grantor's right, title and interest is held sufficient to bar an entail and remainders expectant thereon, *Allen* v. *Ashley School Fund*, 102 Massachusetts, 262, 265; *Coombs* v. *Anderson*, 138 Massachusetts, 376, 378, under a statute allowing it to be done by a deed in common form, Gen. Stat., c. 89, § 4, Pub. Stat. of 1882, c. 120, § 5, p. 732, Rev. Law, c. 127, § 24, although the obvious and established construction of the words "my right, title and interest" confines them to the estate actually owned at the time. *Allen* v. *Holton*, 20 Pick. 458. The right of a disseisee to convey is a different question from the one we have been discussing, but that is not disputed, and in Hawaii seems to be established by law.

It will be remembered that the land in controversy consists of two parcels on the ocean side of Front street. One, called the Bates land, lies between the lines of King street and Waianuenue street extended, these streets being at right angles with Front street; and one called the Kalaeloa land, lies on the further side of King street. The court instructed the jury that the plaintiff had made out a complete paper title to these two lots. This ruling is challenged on several grounds. The Bates land is supposed to have come to Pitman through mesne conveyances from a grant from King Kamehameha III to Elizabeth G. I. Bates. This conveyed the upland above Front street down to what then was its upper side, "and also the sea beach in front of the same down to low-water mark." As the case

comes to us the facts appear but imperfectly, but it would seem that if the words "the sea beach" be taken in a very strict sense, there would have been a strip not conveyed, between the front lines of the upland as described by metes and bounds and the beach, that is, high-water mark; in which case the accretions now in question would not belong to the plaintiff. This is the first ground of challenge. But it would be impossible, on this record, for us to say that the ruling was wrong, and we see no reason whatever to doubt that it was right. The natural interpretation is that the King conveyed the upland and all in front of it to low-water mark. The matter was discussed very fully by the Supreme Court. It said that the area between the part described and high-water mark was not very extensive, was of little value, and was closely connected with the upper part in use. We gather that if the evidence were before us we should be confirmed in our opinion that on this point the ruling was right.

The other land is claimed under a Land Commission award and royal patent to Kalaeloa. The latter, as translated from Hawaiian, bounded the land "Beginning at the west corner of this, adjoining the edge of the street (King street) along the edge of the sea," with a description by courses and distances and area. There was also a diagram enclosing the upland in heavy lines, and extending the sides by dotted lines across a space marked Beach to the edge of the sea. It is said that the measurements go only to the street, although the defendant in error affirms that the area would include the beach. We see no reason why the monuments should not prevail, as usual, if there is a discrepancy as alleged.

Kalaeloa conveyed to Pitman. The deed is not in the record, but it was assigned as error that the court instructed the jury that the words "with the right of extension to low-water mark" covered the lot in question. If anything is open on this assignment, we are of opinion that the ruling was right. We may add at this point that it is not argued here that the conveyances by Pitman under which the plaintiffs in error

claim carried the land on the ocean side of Front street. That remained in Pitman and passed by his devise to his wife.

The plaintiffs in error contend that the trial court erred in its instructions to the jury with regard to the apportionment of accretions. The evidence is not before us, and they rely simply on a statement in the opinion of the Supreme Court. As that court said, they did not claim the portion concerned, and were trying to set aside the verdict on the weakness of the plaintiff's title alone. The Supreme Court was of opinion that the instructions were wrong but that, so far as appeared, the verdict was right, and declined to set it aside or to require a remittitur as a condition of not doing so. It does not appear that there was error in this course.

The plaintiffs in error set up the defense of adverse possession. They admit that the burden was upon them to prove it, but assign as error that the jury was instructed to find against them, unless satisfied by a preponderance of evidence that they had "clearly" proved it. The slight over-emphasis in the word "clearly," if it was such, is not a sufficient ground for disturbing the verdict. See *Ward* v. *Cochran*, 150 U. S. 597, 606.

The final assignments of error are for the refusal to grant a new trial. It seems that after a long trial the plaintiff (defendant in error) moved the court to direct a verdict. In the absence of the jury the judge stated that he was inclined in favor of the plaintiff, but did not want to grant the motion, as there was still some doubt in his mind. He added that should the jury render a verdict for the defendant, and should a motion be made to set it aside, he might do so. He made these remarks, supposing that no reporter was present, but they were printed in the evening paper, with a heading "Favors the Plaintiff." This was called to the attention of the judge, and he was proceeding to instruct the jury not to read the papers of that evening or the next morning, when the counsel for the defendants said: "Your honor, I presume, refers to the article in the Evening Bulletin. We do not ask for such an order.

Let the jurors read the papers, we will take our chances."
In the morning, in consequence of an imputation, there was
some inquiry into the responsibility for the article, proof that
the plaintiff had nothing to do with it, and mutual apologies.
The judge instructed the jury that whatever remarks were
made by the court were made without having heard counsel,
and were not intended to influence the jury, and pointed out
that the jury were the judges of the facts. In short, every
effort was made by all concerned to have the jury disregard
the whole matter. The morning paper, however, reprinted a
part of the article, with a heading "Judge De Bolt leans to
plaintiff,"· etc., and stated that in reply to the reporter the
judge said that he did make such an intimation of his views,
that he did it to save time in arguing the motion, but was not
aware that any member of the press was present. One ground
of·the motion for a new trial was that these papers were read
by several of the jurors before the case was submitted to them,
and afterwards were read aloud in the jury room.

It appears to us that the motion could not have been granted
on the facts as we have stated them, following the statement
of the trial judge. In the first place, the remarks, although
they indicated a present leaning, disclosed a present doubt,
and by no means promised that a verdict for the defendants
would be set aside. They meant little or nothing more than
that by refusing to direct a verdict the judge did not preclude
another application by the plaintiff if he should not prevail.
The morning papers added nothing substantial to the article
of the evening before. The evening article purported to report
the words, the morning one to give a verification of their hav-
ing been spoken. But there was no reasonable doubt of the
truth of the first report, and the truth was assumed in what
was said to the jury on the matter. The waiver by the counsel
of the defendants, although there are some slight differences
in the reports of it, was understood to be, and is found to have
been, in general terms, and to have applied to any other papers
as well as the Evening Bulletin. It would be most unjust to

interpret it otherwise now. The defendants said they would take their chances at a time when there were several ways in which the jury could have been prevented from seeing the papers or seeing them further. They stopped the court from even giving the jury instructions. It is too late now to complain.

It is objected that the judge erred in admitting affidavits of the jurymen that they were not influenced by the reading of the article. *Mattox* v. *United States,* 146 U. S. 140. This error is immaterial, as the order overruling the new trial was right on other grounds.

*Judgment affirmed.*