**VIRGINIA–CAROLINA TIE & WOOD CO.,**
**Inc., v. DUNBAR et al.**
**No. 4468.**

Circuit Court of Appeals, Fourth Circuit.
Aug. 28, 1939.

M. B. Simpson and John H. Hall, both of Elizabeth City, N. C., for appellant.

R. Clarence Dozier and W. I. Halstead, both of Elizabeth City, N. C., for appellees.

Before PARKER, Circuit Judge, and H. H. WATKINS and WYCHE, District Judges.

PARKER, Circuit Judge.

This is an appeal by plaintiff in an action to recover damages for trespass in the cutting of timber. The land involved is swamp

land in Camden County, North Carolina, and plaintiff claims title thereto under deeds executed by the State Board of Education to one J. M. Burgess. Defendant denies that these deeds cover the land in controversy and also relies upon adverse possession under color of title. The jury found the issue as to ownership against plaintiff, and from judgment in accordance with this verdict plaintiff has appealed. The questions presented by the appeal are thus stated in the original brief of plaintiff's counsel, viz.: "1. Did the Court commit error in refusing to direct a verdict for appellant? 2. Did the Court commit error in admitting certain testimony of the witness, P. D. Burgess, as to the location of deeds under which defendants claimed? 3. Did the Court commit error in its charge as to the time of possession necessary to ripen title?"

The first question does not properly arise upon the record; for, although plaintiff's counsel did move for a directed verdict and excepted to the refusal of the court to grant same, the record does not show that they stated any grounds of motion, as expressly required by rule 50(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Prior to the adoption of this rule, there was conflict in the decisions of the federal courts as to the necessity for stating the grounds of a motion for directed verdict. New York Life Ins. Co. v. Doerksen, 10 Cir. 75 F.2d 96, 100. Rule 50(a) has settled that conflict, however, by providing that "a motion for a directed verdict shall state the specific grounds therefor". Moore Federal Practice, vol. 3, p. 3107; Simpkins Federal Practice, 3d ed., p. 480. And we think it important that this requirement of the rule be observed, particularly in view of the enlarged powers granted the court with respect to such motions by rule 50(b), as otherwise judgment might be entered on such a motion after the close of the trial and on a ground which could have been met with proof if it had been suggested when the motion was made. We do not mean to say that technical precision need be observed in stating the grounds of the motion, but merely that they should be sufficiently stated to apprise the court fairly as to movant's position with respect thereto. We doubtless have the power to consider such motion even though the grounds be not stated, if in our opinion this is necessary to prevent a miscarriage of justice; but in ordinary cases,

such as that which is here presented, the grounds of the motion must be stated to avail movant in this court.

We think it not improper to say, however, that had the motion stated the grounds set forth in the brief filed before us by plaintiff, the action of the court below in overruling it would have been proper. A careful perusal of the record shows that there was a real and substantial controversy as to whether the deeds to J. M. Burgess relied on by plaintiff covered the land in controversy. Burgess himself testified to the contrary, saying that he was present when the boundaries of his deeds were surveyed and that the southernmost corner of his land (marked 4 on the map) was 400 yards north of Becky's Bridge, a location which would place the disputed area entirely outside his boundaries. He testified also that the unmarked black gum relied upon by plaintiff as the beginning corner was not such corner at all, but that the true beginning corner was a marked black gum several hundred yards distant from it. The location of both deeds relied on by plaintiff depended upon the location of this black gum beginning corner; and, if it was not located properly, there was no proper location of the deeds under which plaintiff claimed.

In addition to this, there was abundant evidence to the effect that defendants and those under whom they claimed had been in adverse possession of the disputed area under known and visible lines and boundaries and under color of title for more than 21 years prior to the institution of suit, paying taxes thereon and cutting timber and fire wood and hauling woods mould therefrom. As the land was swamp land and defendant was making such use of it as was possible, the possession shown, if continued for the statutory period, would ripen into ownership. Patrick v. Jefferson Standard Life Ins. Co., 176 N.C. 660, 97 S.E. 657, 659; Sucro v. Worthington, 4 Cir. 104 F.2d 472. Plaintiff contends that there was an interruption of this possession, but no such interruption was shown. It is true that one of the witnesses was unable to testify to acts of possession while he was away during the war; but other witnesses showed that the possession relied on was continuous and uninterrupted. Because of defendant's evidence of adverse possession, therefore, as well as because of the controversy over the location of the deeds under which plaintiff deraigned title,

questions for the consideration of the jury were presented and the motion for directed verdict was properly overruled.

◼ The next question relates to the action of the court in overruling objections to the testimony of P. D. Burgess, when asked to identify the land covered by the deeds under which defendants claimed. The boundaries set forth in these deeds were read to the witness and he was allowed to state that he knew the lands embraced by them and to testify as to acts of possession by defendants and those under whom they claimed. Although no ground of objection was stated at the time, so far as the record shows, the objection is now made that the witness should not have been allowed to testify to acts of possession until the boundaries of the deeds were fitted to the lands by description of physical objects corresponding to the boundaries in the deeds. We think, however, that the examination was in accordance with the North Carolina rule to the effect that a witness may state that a deed covers land in dispute when he is stating facts within his own knowledge. Singleton v. Roebuck, 178 N.C. 201, 100 S. E. 313; McQueen v. Graham, 183 N.C. 491, 111 S.E. 860. The testimony, while involving a conclusion, meant no more as a practical matter than that the witness knew land having boundaries corresponding to those contained in the deeds read to him and that the acts of possession to which he testified occurred on that land. Whether the witness should have been required to locate the measurements and boundaries more specifically before testifying to the location of the land was a matter resting very largely in the discretion of the trial judge; and that the discretion was properly exercised appears from the fact that no effort was made by plaintiff on cross examination to challenge the witness's location.

But while, as indicated, we think the questions proper under the North Carolina decisions, it is a sufficient answer to the objections thereto that no ground of objection was stated as required by rule 46 of the Rules of Civil Procedure; and this case furnishes good illustration of the wisdom of that requirement. If plaintiff had given in the lower court such grounds of objection as are urged here and there had been reason to think that the witness was not thoroughly familiar with the boundaries of the land, the court would doubtless have required defendant to fit the deeds to the land more specifically. Such general ob-

jections would not have been good even under the practice prevailing in the federal courts prior to the adoption of the Rules of Civil Procedure. Niagara Fire Ins. Co. v. Raleigh Hardware Co., 4 Cir. 62 F.2d 705, 710; Miller v. Estabrook, 4 Cir. 273 F. 143, 147; R. D. Cole Mfg. Co. v. Mendenhall, 4 Cir. 240 F. 641, 643; 4 C.J.S., Appeal and Error, §.290, pages 570, 571.

◼ The third question relates to the charge of the court to the effect that adverse possession for seven years under color of title would ripen title in the defendant. The title being out of the state, seven years adverse possession under color is sufficient to ripen title in ordinary cases. C.S. § 428. Plaintiff, however, claiming under deeds from the State Board of Education, relies upon C.S. § 7618, which provides: "No statute of limitation shall affect the title or bar the action of the state board of education or its assigns, unless the same would protect the person holding and claiming adversely against the state." Twenty-one years adverse possession under color of title is required to protect against action by the state. C.S. § 425. It is argued, therefore, that, since plaintiff is claiming under the State Board of Education, the seven year Statute will not bar it, but such adverse possession must be shown as would bar the State Board of Education or the state itself, i. e., twenty-one years possession under color of title or thirty years possession without color.

◼ The evident purpose of C.S. § 7618 was to make applicable to the State Board of Education, an agency of the state, the same limitations applicable to the state itself; and the use in the statute of the words "or its assigns" was intended, we think, to make applicable to these the same limitations made applicable to the Board, but only as applied to adverse possession had while title was in the Board. It could hardly have been intended to give to private landowners, merely because they deraigned title through the Board, the benefit of the twenty-one and thirty year statutes of limitations with respect to adverse possession had subsequent to their acquisition of title, instead of the seven and twenty year statutes, applicable to landowners generally. Here lands were conveyed by the Board to J. M. Burgess in 1907 and 1909, and thereafter he held them just as any other private landowner. In 1910 he conveyed them to the Roanoke Railroad and Lumber Co., and in 1921 that company conveyed them to

plaintiff. That these persons and their grantees for an indefinite period in the future should have the benefit of an entirely different statute of limitations from that applying to ordinary landowners, merely because their title is deraigned through the State Board of Education, is not reasonable; and an interpretation of the statute which would lead to such a conclusion is to be avoided. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R., 249; Hawaii v. Mankichi, 190 U.S. 197, 212-214, 23 S.Ct. 787, 47 L.Ed. 1016; United States v. Kirby, 7 Wall. 482, 19 L. Ed. 278.

The Supreme Court of North Carolina has not passed on the question here involved, the nearest approach to a decision thereon being in Tillery v. Lumber Co., 172 N.C. 296, 90 S.E. 196, where the court held that assuming that a grantee of the Board occupied the position of the Board, such grantee would be precluded by the three year statute from recovering for the cutting of timber. In the absence of authoritative interpretation to the contrary by the Supreme Court of the state, we would be inclined to hold that C.S. § 7618 does not apply with respect to possession had after the Board had parted with title; but it is not necessary to decide this question, for, even if the twenty-one year statute is applicable, the error in charging as to the applicability of the seven year statute was entirely harmless under the facts of the case and should be disregarded for that reason.

■ The evidence relied upon by defendants to establish adverse possession under color shows such possession for more than twenty-one years; and there is no possible theory of the case upon which the jury could rationally have found that defendants and those under whom they claim had been in possession for seven years without finding that they had been in possession for more than twenty-one years. All of the witnesses who testified as to adverse possession fixed the period for more than twenty-one years; and the case of P. D. Burgess is no exception. True it is that he was away in the army for about two years; but he showed the defendants in possession when he left and when he returned, there is nothing upon which an inference could be based that their pos-

session was interrupted, and the evidence of other witnesses is to the effect that it was not interrupted. Any error, therefore, in charging that the seven year statute rather than the twenty-one year statute was applicable was necessarily harmless. If the jury accepted defendant's evidence as to adverse possession, possession for the statutory period was unquestionably established whether that period was seven or twenty-one years. Cf. Goins v. United States, 4 Cir. 99 F.2d 147, 149; Id., 59 S.Ct. 783, 83 L.Ed. 1027. Error, if any, could not have affected the substantial rights of the parties, therefore, and must be disregarded under rule 61 of the Rules of Civil Procedure.

■ In their supplemental brief plaintiff's counsel make the point that there was error in refusing to permit the witness Dudley to give the location of the Burgess deed upon the assumption that the true location of the beginning corner was 400 yards north of Becky's Bridge. A careful examination of the record shows, however, that counsel were simply attempting to have Dudley, who was a surveyor, repeat his testimony as to the location of the land, in connection with a statement made by the witness J. M. Burgess, which he subsequently corrected. J. M. Burgess at one time said that the black gum beginning corner was 400 yards north of Becky's Bridge. He later changed this statement and said that it was the southernmost corner of the land (No. 4) that was 400 yards north of that bridge (Record 149). Counsel for plaintiff sought to have the surveyor locate the land according to the first statement of this witness (which was practically in accord with plaintiff's contention) rather than in accord with his corrected statement; and the court, after permitting the testimony to be given, struck it out as mere repetition having a tendency to confuse. We think that the judge was clearly acting within the limits of his discretion in the matter; and, at all events, we do not think the testimony was of sufficient importance to have affected the result. Counsel properly appraised the importance of the point when they ignored it in their first brief.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.