PENNEY *v.* LONG.

4-7981                                          197 S. W. 2d 470

Opinion delivered November 18, 1946.

*A. D. Chavis,* for appellant.

*Mike Danaher* and *Palmer Danaher,* for appellee.

HOLT, J. September 4, 1945, appellant, Georgia Penney, brought this action primarily to cancel and set aside a quitclaim deed to a house and lot in the city of Pine Bluff, which she and her daughter, Earthalee Penney, executed in favor of Robert Long and Ester Long on April 1, 1937, which deed she alleged the Longs procured from them through fraud. More specifically, she alleged that her husband, Alonzo Penney, died intestate December 25, 1936, leaving as his sole survivors appellant, his

widow, and Earthalee, his daughter, and that the property, *supra,* was their homestead.

She further alleged (quoting from appellant's brief): "That the plaintiff (appellant) placed the utmost confidence in Robert Long, before and after the death of her husband, and was relying on him as a friend and adviser, and did not know she had deeded her homestead away until she was so advised by her lawyer; that the plaintiff received no consideration for the purported deed, but had been damaged by the fraud perpetrated by Robert Long and his wife; . . . that Robert Long is the administrator of the estate of Alonzo Penney, that there had been no assignment of dower or homestead rights in the property of her deceased husband; that on the 24th day of July, 1945, the Longs conveyed the homestead, by warranty deed, to Curlee Mack and Vee Mack for $550 cash, and the Macks well knew that the Longs had perpetrated a fraud on the plaintiff in procuring said deed."

She prayed for a cancellation of the deed, for a restraining order enjoining the Macks from interfering with possession of the property, for damages and costs.

Appellees answered with a general denial.

The trial court found all issues in favor of appellees and dismissed appellant's complaint for want of equity. This appeal followed.

Appellant earnestly insists that she and her daughter were induced to sign the deed to her property in favor of the Longs by the fraudulent representations and acts of Robert Long and his wife.

The facts were that following the death of appellant's husband in December, 1936, appellant, after having discovered that the property involved had become delinquent for the taxes for the years 1933, '34, '35 and '36 went to the Longs for assistance. According to the testimony of the Longs and appellant's daughter, Earthalee, appellant agreed to sell the property to the Longs for a valuable consideration over and above the taxes due thereon. It was in a bad state of repair, practically

on the ground, and Negro property in the Negro section of the city. Appellees were out approximately $379 on the property. Robert Long testified that as part of the consideration, he bought a stove for appellant for which he paid approximately $40, gave her $75 in cash, and gave her and her daughter groceries and dry goods to the amount of $75, and that he and his wife paid appellant and her daughter approximately $208 in addition to what he paid out for delinquent taxes.

Earthalee testified: "Q. All you got was twenty-five dollars and fifty or sixty dollars worth of different clothes that Robert Long selected and paid for and delivered to you? A. Well, groceries and clothes, because I had a little boy. I didn't have no husband, and they was helping me just like they helped her"; that she was present when Georgia Penney signed the deed at the lawyer's office; that the lawyer explained everything to them— what was going on, and they knew what they were doing; that the deed was written while they were there, and she and Georgia signed it and that it was acknowledged before a notary public. The house was in "real bad shape, just flat on the ground."

While appellant testified that she did not know she was signing a deed, she did not deny that she could read and write. She testified: "Robert Long and Ester (Long's wife) had me to sign the deed." She further testified that appellees paid her nothing for the property.

We think it unnecessary to detail all of the testimony. It suffices to say, as we have indicated, that we find no fraud practiced by appellees in the procurement of the deed from appellant and her daughter.

Here, appellant is in the attitude of impeaching a deed signed and acknowledged by her and her daughter, and this she could do only by clear, cogent and convincing testimony. The evidence introduced by her does not meet this requirement. In *Morris* v. *Cobb*, 147 Ark. 184, 227 S. W. 23, this court said: "Again, appellant is in the attitude of impeaching the deed purported to have been executed and acknowledged by him. He could only do this

by clear, cogent and convincing evidence. *Bell* v. *Castleberry*, 96 Ark. 564, 132 S. W. 649; *Polk* v. *Brown*, 117 Ark. 321, 174 S. W. 562.''

Nor do we think the purchase price so inadequate as to establish fraud. ''The principle is elemental that mere inadequacy of price is not of itself sufficient to establish fraud.'' *Ramsey-Milburn Co.* v. *Sevick*, 159 Ark. 358, 252 S. W. 20.

The only testimony on the question of value of the property appears to be that of Ester Long, who testified that, in her opinion, the property was not worth any more than they paid for it.

We are also of the opinion that the preponderance of the testimony shows no trust relationship existing between appellant and appellees.

Appellant's contention that the quitclaim deed executed by her did not convey the land involved to the Longs because it did not contain the words ''grant, bargain and sell'' is, we think, untenable. The deed is as follows: ''Quitclaim Deed—Georgia Penney, *et al.*, to Robert Long, *et al.* Know All Men by These Presents: That for and in consideration of the sum of one dollar, cash in hand paid, receipt of which is hereby acknowledged, and other valuable considerations, not herein mentioned, we, Georgia Penney, widow of Alonzo Penney, and Earthalee Penny, daughter and sole heir at law of Alonzo Penny, hereby release, relinquish and quitclaim unto Robert Long and Ester Long, their heirs and assigns forever, all our right, title and interest in and to the following lands lying in the county of Jefferson and State of Arkansas, described as follows: . . . To Have and to Hold the same unto the said Robert Long and Ester Long, their heirs and assigns, in fee simple forever. Witness our hands and seals this 1st day of April, 1937. (Signed) Georgia Penney, (Signed) Earthalee Penney.'' (Then follows the acknowledgment.)

''In this country a quitclaim deed is a substantive mode of conveyance, and is as effectual to carry all the right, title, interest, claim and estate of the grantor, as a

deed with full covenants, although the grantee has no possession of or prior interest in the land. It is almost the only mode in practice where the vendor does not wish to warrant the title." *Bagley* v. *Fletcher*, 44 Ark. 153.

The Supreme Court of the United States in *Spreckels* v. *Brown*, 212 U. S. 208, 29 S. Ct. 256, 53 L. Ed. 476, held that the words in a deed "purporting to 'remise, release and forever quitclaim' . . . 'all right, title and interest in and to' the premises," conveyed "as fully as the words give and grant."

Appellant further contends "in the case at bar, there was no assignment of the widow's dower, and her attempt to transfer it, by conveyance, is void, and passes no estate in the property to the grantee, and appellees, Robert Long and wife."

The rule in this state seems to be well settled that while a widow's dower in real property, before assignment to her, cannot be conveyed by her to a stranger so as to confer upon him any rights which he might enforce in a court of law, courts of equity do not hesitate to uphold such conveyances.

In *Baum* v. *Ingraham*, 141 Ark. 243, 216 S. W. 704, this court said: "The widow had conveyed her unassigned dower in the land to the defendant, Ingraham. It has been held that a conveyance by a widow of her dower in land before it has been assigned to her will be upheld in a court of equity, and her dower interest may be recovered by her alienee."

Appellant also contends that "where the grantor remains in possession, there is a presumption that he does so in subordination to the title granted, unless there is affirmative evidence, as in the case at bar, of a contrary intention, such presumption is overcome by lapse of time." In support of this contention is cited *Stuttgart* v. *John*, 85 Ark. 520, 109 S. W. 541. In that case, it appears that the grantor remained in possession for approximately thirteen years, but it was there held that he did not regain the title by lapse of time.

We fail to find any evidence in this record showing a contrary intention on the part of appellant, and appellant has pointed to none, nor, as we have already said, do we find any evidence of a relationship of trust or confidence between appellant and her grantees, or undue influence on the part of appellees.

Finally, appellant says that there was a condition subsequent in the deed in question, and "if the testimony of appellee, Robert Long, was true, for the appellant to remain in possession and go on as she was until she made other arrangements, without any limitation of time, and when the appellees, Robert Long and wife, attempted to sell the same to Curlee Mack, and moved the appellant, he violated that condition, and rendered the conveyance invalid, had it been valid to begin with."

We think the great preponderance, if not all, of the testimony, fails to support this contention. The wording of the deed, *supra,* is unconditional.

The testimony of Robert Long to which appellant refers as bearing upon this point was: "And Georgia said if you will make arrangements and buy this property from me and let me stay here until I can make a change to go to my friends, I will appreciate it. And I told her to go on just like she was doing until she could do that. Then we had the papers fixed up and Georgia and Earthalee both signed them, and still Georgia stayed there and we didn't try to bother her or move her out and we didn't charge her any rent. And since that time we have been paying the taxes on the land and all like that, and now we done paid out three hundred and seventy-nine dollars and some odd cents, with the taxes."

This court, in *Bain* v. *Parker,* 77 Ark. 168, 90 S. W. 1000, said: "Conditions subsequent that defeat the estate conveyed by the deed are not favored in law. The words of the deed must clearly show a condition subsequent, or the courts will take it that none was intended; and when the terms of the grant will admit of any other reasonable interpretation, they will not be held to create an estate on condition. Now if we treat the deed as con-

taining the words referred to, there are still no words of condition in the deed and no words indicating that the estate should be forfeited if the road was not completed at the date named.''

On the whole case, finding no error, the decree is affirmed.