**UNITED STATES v. ROSENBERG et al.**

Nos. 162, 163, Dockets 22570–22571.

United States Court of Appeals
Second Circuit.

Argued Dec. 22, 1952.

Decided Dec. 31, 1952.

Emanuel Bloch, New York City, for appellants Julius Rosenberg and Ethel Rosenberg.

Howard N. Meyer, Harold M. Phillips and Edward Kuntz, New York City, for appellant Morton Sobell.

Myles J. Lane, U. S. Atty., New York City, James B. Kilsheimer, III, New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and CHASE and FRANK, Circuit Judges.

SWAN, Chief Judge.

The appellants were convicted of conspiracy to violate the Espionage Act.[1] They were sentenced on April 5, 1951. Their conviction was affirmed by this court,[2] and thereafter petitions for certiorari and for rehearing were denied by the Supreme Court. The present appeals are

1. The Act as it now reads is 18 U.S.C.A. § 794.

2. United States v. Rosenberg, 2 Cir., 195 F.2d 583.

from orders dismissing petitions under 28 U.S.C.A. § 2255 by which the petitioners sought release from custody upon the ground that their sentences were imposed in violation of the Constitution or laws of the United States. Under this section the court must grant a prompt hearing, determine the issues and make findings of fact and conclusions of law with respect thereto, "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief". After hearing oral argument of counsel for petitioners and of the United States Attorney, Judge Ryan ruled that it was conclusively shown that the petitioners were entitled to no relief and that no material issue of fact was raised which required a "hearing." He wrote an able, careful and comprehensive opinion, familiarity with which will be assumed without repeating herein his discussion of the points considered.

■ The remedy afforded by this statutory proceeding is analogous to that afforded by a writ of habeas corpus. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263. It, like that writ, "cannot ordinarily be used in lieu of appeal to correct errors committed in the course of a trial, even though such errors relate to constitutional rights." United States v. Walker, 2 Cir., 197 F.2d 287, 288; Adams v. United States ex rel. McCann, 317 U.S. 269, 274, 63 S. Ct. 236, 87 L.Ed. 268. Nor can it be used to obtain a retrial according to procedure which the petitioner voluntarily discarded and waived at the trial upon which he was convicted. Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268; Carruthers v. Reed, 8 Cir., 102 F.2d 933, 938; United States ex rel. Marshall v. Snyder, 2 Cir., 160 F.2d 351, 353; Bowen v. United States, 5 Cir., 192 F.2d 515, 517; Smith v. United States, 88 U.S.App.D.C. 80, 187 F.2d 192, 198, certiorari denied 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358. These limitations on the function of a petition under § 2255 must be borne in mind in considering the present appeals.

■ Since Judge Ryan held no hearing at which testimony could be presented, it is necessary to treat as true all facts stated in the petitions and in accompanying affidavits and exhibits, and to disregard all contrary statements of fact in the government's affidavits. This does not mean, however, that Judge Ryan was obliged to accept as facts conclusionary allegations asserted by the petitioners. See United States v. Sturm, 7 Cir., 180 F.2d 413, 414; United States v. Pisciotta, 2 Cir., 199 F. 2d 603. For example, the fact that newspapers carried the stories set out in the exhibits must be accepted, but the conclusion that such publicity made impossible the selection of an impartial jury is an inference which the judge is not necessarily bound to accept. If, so treating the allegations of fact, the petitioners would be entitled to relief on any particular item, we should remand as to that item for the taking of testimony and the making of findings of fact. With this preliminary statement as to the necessary approach to the problem we turn to the particular items upon which the petitioners relied as entitling them to relief.

■ 1. Alleged prejudicial newspaper publicity. The first ground of attack upon their conviction asserted by the petitioners is that newspaper publicity before and during their trial, some of which was government inspired, was such as to bring about "a communal prejudgment of their guilt" and thus deprive them of their Constitutional right to trial by an impartial jury. A great mass of newspaper clippings was submitted as exhibits attached to their petitions. They cover a period from February 1, 1950 to April 3, 1951. Nothing with specific reference to the petitioners appeared until about the time of their arrest. Julius Rosenberg was arrested July 17, Ethel Rosenberg August 11, and Morton Sobell August 18, 1950. The trial commenced March 6, 1951 and ended March 29th. There was considerable newspaper comment when they were arrested. During September, October and November, newspaper references to the case were few and brief. From November to February 21, 1951, there were no news items whatever concerning the pending prosecution. When a defendant believes that pretrial

publicity has been such as to render impossible the selection of an impartial jury, there are well-recognized methods of raising this issue before the trial commences. He may move for a change of venue or for a continuance until the public clamor shall have subsided. The petitioners took neither of these courses. On the *voir dire* the prospective jurors were carefully questioned as to whether they had read or heard about the case and a jury was selected satisfactory to the defendants, who did not even use all the peremptory challenges permitted them. Nor do they allege that any trial juror was in fact prejudiced by the publicity now asserted to have made a fair trial impossible.[3] Their present position is obviously an after-thought, inspired by the hope of securing a new trial after having exhausted all hope of reversing the verdict by appeal and petitions for certiorari. The excuse offered by counsel for the Rosenbergs is that he did not realize at the date of the trial the extent and the inflammatory character of the publicity as it could not have been revealed to him "by the usual sporadic reading of an average newspaper reader," and he was so busy that he "read the newspapers" infrequently. But if he did not realize it, there is no reason to suppose that the jury was more seriously affected. Sobell's argument also urges that he and his counsel could not until the government rested its case have been aware of how detrimental the publicity regarding "atom spies" was. In essence this argument appears to be that the evidence at the trial showed that there were two conspiracies in only one of which was Sobell involved, a contention which was ruled against him on the prior appeal. Moreover, Sobell's petition alleges that the publicity concerning Julius Rosenberg "obviously rebounded to the prejudice of all defendants." If so, this should have been as obvious to him at the time of trial as now. The only evidence the petitioners wished to offer as to the effect of the newspaper publicity, if a hearing were accorded, was the opinion testimony of a supposed expert on mass psychology. Judge Ryan did not abuse his discretion in declining to grant a hearing to receive such opinion evidence. The situation in Delaney v. United States, 1 Cir., 199 F.2d 102, upon which the petitioners so strongly rely, was very different. Not only was the Delaney publicity more obviously damaging and much closer to the date of trial but there the defendant did move for a continuance and the denial of this motion was the ground on which the court reversed the appellant's conviction. The best that can be said in the instant case is that, at the time of trial, astute counsel decided that the publicity did their clients no harm, and now want this court to decide otherwise.[4]

With respect to newspaper publicity during the trial, the petitioners' principal complaint relates to stories concerning the indictment of one Perl. He was indicted for perjury committed in denying that he knew Sobell, Julius Rosenberg and certain persons whose names were prominently mentioned in the trial of the petitioners. The indictment, when returned, was ordered sealed. It was made public on March 15, 1951. The affidavits show that Mrs. Greenglass was still on the witness stand when the story of the Perl indictment was published in the city papers, and that the New York Times carried a statement ascribed to the United States Attorney then in office, as follows:

"Mr. Saypol said also that Perl had been listed as a witness in the current espionage trial. His special role on the stand, Mr. Saypol added, was to corroborate certain statements made by David Greenglass and the latter's wife, who are key Government witnesses at the trial."

The petitioners assert that the unsealing of the Perl indictment and the statement by Mr. Saypol were timed by the prosecution

---

3. Whether in appropriate circumstances such a showing may be dispensed with, we need not now decide.

4. Of the four trial counsel, two at least must be deemed to have been fully cognizant of this newspaper publicity. For the assertion to the contrary is not made by trial counsel for Mrs. Rosenberg nor by one of the two trial counsel for Sobell.

with the purpose of prejudicing them in their trial. Since no hearing was accorded, we must, as already stated, assume that publication of the indictment was deliberately "timed" and the statement attributed to Mr. Saypol was made by him. Such assumed tactics cannot be too severely condemned. But the essence of the wrong done the petitioners does not lie in the intent of the prosecutor but in the prejudicial publicity which may come to the attention of the jury. When publicity believed to be prejudicial occurs during a trial, the defendant may move for a mistrial or may request the trial judge to caution the jury to disregard it. United States v. Weber, 2 Cir., 197 F.2d 237, 239. In this case the defendants did neither. We may assume that, in this case, a cautionary instruction would not suffice, and that, if defendants had then moved for a mistrial, it should have been granted. But they did not so move. This was their deliberate choice after conferring with the judge out of the presence of the jury. They now seek to excuse the omission because when they conferred with the judge Mr. Saypol gave assurance that he had not "timed" the Perl indictment. Such assurance they then accepted as true but they have recently concluded that it was false, because Perl has not yet been brought to trial. This is not a valid excuse. As stated above, Mr. Saypol's motive and "timing" in opening the indictment are irrelevant; the wrong consisted in the statement made to the press to the effect that the government had expected to use Perl's testimony to corroborate the Greenglasses, and the intimation that because he had backed out he had been indicted for perjury. Such a statement to the press in the course of a trial we regard as wholly reprehensible. Nevertheless we are not prepared to hold that it vitiates the jury's verdict when there is no allegation or evidence that any juror read the newspaper story and the defendants deliberately elected not to ask for a mistrial. Cf. Spreckels v. Brown, 212 U.S. 208, 213–215, 29 S.Ct. 256, 53 L.Ed. 476. As they thus chose to have the trial continue, they obviously concluded that the prosecutor's statement to the press had not prejudiced the jury against them.

Having themselves so concluded, they may not, after an adverse verdict, ask the court to reach a contrary conclusion. Indeed, the petitioners did not mention the prosecutor's statement in their motions for a new trial nor on their previous appeal.

■ 2. Alleged use of perjurious testimony. The second ground of attack on their conviction is that the prosecution knowingly used false testimony. There are three specifications. The first relates to Greenglass' testimony that on the night of his arrest he did not withhold any facts from the FBI. When he was sentenced on April 6, 1951, the day after the petitioners' sentences, the United States Attorney stated to the court, "Mr. Rogge protested his innocence" at the arraignment. "Through Ruth Greenglass, his wife, came the subsequent recantation of these protestations, their repudiation and the disclosure of the facts by both of them." On the basis of this statement the petitioners argue that the testimony was false and known to be false by the prosecuting officer. Judge Ryan said that when read in context with all the proceedings on April 6th he did not regard it as an admission that Greenglass had committed perjury and that there was no factual basis for inferring that perjurious testimony had been knowingly used. We agree. It is notable that petitioners made no mention of these facts on their previous appeal although then well aware of them.

■ The second specification relates to Greenglass' testimony that, the day before he began to testify, he made from memory certain drawings of lens molds used several years before at Los Alamos in the atombomb project. The petitioners contend that it would have been impossible for him to make these sketches from memory and hence his testimony that he did so was false and the prosecution must have known it to be false. This is nothing new. For, at the trial, the defendants, on cross-examination, had brought out the details of Greenglass' education, with the patent purpose of persuading the jury that he had lied. In support of their renewed assertion of his perjury, defendants, on the § 2255 motion, presented the affidavits of four scientists

who express the opinion that Greenglass, with his limited education as shown at the trial, could not have made the sketches from memory. Since none of them knew Greenglass, none was in a position to give an opinion about the quality of his memory which, no matter what his education, may have been amply sufficient for this purpose. As additional evidence concerning Greenglass' memory, these opinions, assuming *arguendo* they would be admissible at a trial, are wholly inadequate to justify a new trial. The affidavits bear solely on the credibility of his testimony and that issue was properly submitted to the trial jury for decision. As to this specification the moving papers were insufficient on their face.

■ The third specification relates to the rebuttal witness Schneider. He was a photographer. He testified that in May or June 1950 Mr. and Mrs. Rosenberg and their two children came to his shop and had passport photographs taken. He was asked whether that was the last time he had seen Julius Rosenberg "before today," and he replied "That's right." In fact he had been brought into the court room by an FBI agent the day before he testified and had identified Rosenberg at that time. Counsel lays stress upon the word "today" to prove the testimony perjurious, but on cross-examination of Schneider at the trial both court and counsel treated the question as meaning "before the trial." Judge Ryan was correct in ruling that there was not the slightest evidence that Schneider's testimony was intentionally false and that in any event it was on an immaterial point, *i. e.,* identification of the Rosenbergs as persons whose pictures he had taken, since the Rosenbergs had not denied that they might have gone to his shop for that purpose, although Julius Rosenberg categorically insisted that they were not passport pictures.

3. Alleged character of information transmitted. The petitioners' next point is that their conviction should be set aside because one item of information classified as secret which they were charged with

having conspired to transmit to Russia, was so generally known that transmitting it was not forbidden by the Espionage Act. This matter was thoroughly discussed by Judge Ryan. We have nothing to add to his opinion, except to say that United States v. Heine, 2 Cir., 151 F.2d 813, certiorari denied 328 U.S. 833, 66 S.Ct. 975, 90 L.Ed. 1608, upon which the appellants rely, is so different in its facts as to be completely inapposite.

■ 4. The treason clause of the Constitution. Appellant Sobell in his § 2255 petition advances an additional ground for relief which we understand to be as follows: As to him the evidence showed at most "treachery and general intent to betray"; such an intent does not suffice to prove the specific intent required by the Espionage Act but would meet only the general intent called for by the treason clause of the Constitution; and there was here no compliance with the procedural demands of that clause. This contention raises a question of law as to which there was no need for the taking of evidence on the motion. It could have been raised on the prior appeal in support of the argument then made as to the insufficiency of the evidence to prove specific intent which we then held was adequately proved. It was raised before the Supreme Court in the petition for rehearing which was denied. Assuming without decision that nevertheless it may now be raised in its present form by a motion under § 2255, we hold that it is without merit.

■ 5. Also without merit is the contention that the court erred in permitting the transfer of Sobell from New York to Alcatraz, California, pending the presentation of his petition and in declining to direct his return while it was under consideration. Since no issues were raised which required his presence as a witness, it does not appear that his absence was in any respect harmful. See United States v. Pisciotta, 2 Cir., 199 F.2d 603.

The orders on appeal are affirmed.